## Conn *v.* State

No. 43311          December 18, 1964          170 So. 2d 20

*Thomas D. Berry, Jr.,* Gulfport, for appellant.

G. *Garland Lyell, Jr.*, Asst. Atty. Gen., Jackson, for appellee.

JONES, J.

■ ■ Appellant, Conn, was convicted in the Circuit Court of Harrison County on an indictment charging him with knowingly having received stolen property, and sentenced to three years in the penitentiary. We are compelled to reverse because of decisions of the Supreme Court of the United States which establish that the first assignment of error hereinafter mentioned is well taken, and has been so recognized by our legislature in House Bill 193 of the General Acts of the Regular 1964 Session (amending Mississippi Code Annotated Section 2505 (1956), wherein authority is given to the courts under the facts specified therein to appoint

counsel for those charged with a felony less than capital. While this Act leaves the matter within the discretion of the trial court, the cases hereinafter mentioned, particularly *Gideon,* eliminate the question of discretion.

There are two errors here charged: (1) The defendant, it is alleged, was indigent, and the court failed to furnish him an attorney; and (2) the search warrant was defective and the radio said to have been illegally received should not have been admitted in evidence.

### First Assignment

The appellant had no attorney at the trial. The only matter in the record to show that he was indigent is that he filed a pauper's affidavit in lieu of cost bond. His poverty is not refuted in the record. Nor is it shown that he waived the appointment of counsel. The case requires that such a waiver, if any, be understandably made. The only thing shown by this record is the following from the minutes of the court: "Comes the District Attorney who prosecutes for the State, and also comes the defendant in his own proper person, (*and the defendant being by the Court advised as to his right to the benefit of counsel*) and thereupon the defendant, Douglas Clifton Conn, being arraigned and charged upon the indictment herein against him, charging him with the crime of receiving stolen property for plea thereto says he is not guilty in manner and form as therein charged against him. The defendant is remanded to the custody of the Sheriff to await further proceedings herein." (Emphasis ours)

In Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L.Ed. 2d 799 (1963), the petitioner was charged with breaking and entering in the state court of Florida. He requested counsel and was refused because the Florida laws provided for the court to appoint counsel only in capital cases. He undertook to represent himself, was convicted, and sentenced to five years. Later Gide-

on filed in the Florida Supreme Court a habeas corpus petition claiming the court's refusal to appoint an attorney for him denied his rights "guaranteed by the Constitution and the Bill of Rights by the United States Government." The state court denied relief.

The Sixth Amendment to the Constitution of the United States provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." Prior to *Gideon,* that had been construed to mean that in Federal Courts counsel must be provided for defendants unable to employ counsel, unless the right is *competently and intelligently waived.* Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938).

The *Gideon* case held that this applied to state action also. "We accept *Betts v. Brady's* assumption, based as it was on our prior cases, that a provision of the Bill of Rights which is 'fundamental and essential to a fair trial' is made obligatory upon the States by the Fourteenth Amendment. We think the Court in *Betts* was wrong, however, in concluding that the Sixth Amendment's guarantee of counsel is not one of these fundamental rights. Ten years before *Betts v. Brady,* this Court, after full consideration of all the historical data examined in Betts, had unequivocally declared that 'the right to the aid of counsel is of this fundamental character.' Powell v. Alabama, 287 U.S. 45, 68 (1932). While the Court at the close of its *Powell* opinion did by its language, as this Court frequently does, limit its holding to the particular facts and circumstances of that case, its conclusions about the fundamental nature of the right to counsel are unmistakable. Several years later, in 1936, the Court reemphasized what it had said about the fundamental nature of the right to counsel in this language: 'We concluded that certain fundamental rights, safeguarded by the first eight amendments against federal action, were also safeguarded against

state action by the due process of law clause of the Fourteenth Amendment, and among them the fundamental right of the accused to the aid of counsel in a criminal prosecution.' Grosjean v. American Press Co., 297 U.S. 233, 243-244 (1936).

"And again in 1938 this Court said: '(The assistance of counsel) is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. . . The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not "still be done." Johnson v. Zerbst, 304 U.S. 458, 462 (1938). To the same effect, see Avery v. Alabama, 308 U.S. 444 (1940), and Smith v. O'Grady, 312 U.S. 329 (1941) . . .

"Not only these precedents but also reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive

safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him. A defendant's need for a lawyer is nowhere better stated than in the moving words of Mr. Justice Sutherland in *Powell v. Alabama*:

" 'The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.' 287 U.S., at 68-69." 372 U.S. at 342-345.

In Johnson v. Zerbest, 304 U.S. 458, 464-65 (1937), the Supreme Court of the United States stated, relative to appointment of counsel: "There is insistence here that petitioner waived this constitutional right. The District Court did not so find. It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and

circumstances surrounding that case, including the background, experience, and conduct of the accused. . . .

"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." See also White v. Maryland, 373 U.S. 59, 83 Sup. Ct. 1050, 10 L. Ed. 2d 193 (1963); Escobedo v. Illinois, 84 Sup. Ct. 1758, 12 L. Ed. 2d. 977 (1964); U. S. v. Harpole, 263 F. 2d 71, 83 (5th Cir. 1959) headnotes 14 and 15.

■■■ In accordance with these mandatory decisions we hold that there must be an intelligent and competent waiver of counsel by the defendant and that the trial court should so determine, and, further, that such determination, as well as the facts on which it is based, should appear in the record.

### Second Assignment .

■■ ■ The search warrant under which the radio was recovered and introduced was defective and neither the radio nor the warrant should have been introduced in evidence.

The property for the possession of which appellant was indicted was solely a radio. The affidavit for search warrant was not introduced but the pertinent portion of the search warrant reads as follows:

"Oath having been made before the undersigned, Justice of the Peace, in and for said County, that    burglary tools and stolen property    the property of——— on or about the    14th    day of    December    19 63,

in said County was Feloniously taken, stolen, or carried away, and that suspicion rests on Douglas Conn as guilty of said crime. . . .''

No burglary tools were found and as ''stolen property,'' there was, as stated, only the radio. The description of the property sought was utterly void. Article III, section 23 of our Constitution reads: ''The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized.''

The description ''stolen property'' is no description. For property other than what is illicit or contraband, the thing or things to be seized must be described with some particularity. See 79 C.J.S., Searches and Seizures 381(c) (1952).

The state insists that appellant waived objection to the defective warrant and cites Johnson v. State, 220 Miss. 452, 70 So. 2d 926 (1954); Boutwell v. State, 165 Miss. 16, 143 So. 479 (1932), and other cases.

However, under the cases of the United States Supreme Court heretofore cited, without the assistance of an attorney, the appellant not shown to be intelligent or learned in the law, could have made no ''competent and intelligent waiver.''

Reversed and remanded.

*Kyle, P. J., and McElroy, Rodgers and Patterson, JJ.,* concur.