**E. L. WOODRUFF, Plaintiff,**

v.

**Thomas D. COOK, Superintendent, Mississippi State Penitentiary, Defendant.**

**No. GC 6943–S.**

United States District Court,
N. D. Mississippi,
Greenville Division.

March 16, 1970.

E. L. Woodruff, pro se.

A. F. Summer, Atty. Gen., State of Miss., Guy N. Rogers, Asst. Atty. Gen., State of Miss., Jackson, Miss., for defendant.

## OPINION

ORMA R. SMITH, District Judge.

This habeas corpus proceeding is before the Court for disposition, after a full evidentiary hearing on the merits of the case.

The evidence before the Court shows that petitioner, E. L. Woodruff, was arrested in Sunflower County, Mississippi, on March 9, 1962 on several charges of burglary. At the time of his arrest Woodruff was out of the Mississippi State Penitentiary on an indefinite suspension of a prison sentence previously given him by the Circuit Court of Grenada County.

After his arrest Woodruff was carried to the Leflore County jail where he was held for approximately ten (10) days, before being carried back to the Mississippi State Penitentiary at Parchman, Mississippi, on account of the revocation of his suspension of sentence.

Woodruff was incarcerated in the penitentiary at Parchman until he was carried to the Tallahatchie County Circuit Court at Sumner, Mississippi, to answer five indictments for burglary and grand larceny. Woodruff was jointly indicted with one Earl Scott in each of the five indictments.

The minutes of the Tallahatchie County Circuit Court reflect that on September 5, 1962, Woodruff and Scott plead guilty to the charges. They were sentenced to serve a term of seven (7) years in the State Penitentiary on each indictment, the sentences to run concurrently.

Woodruff filed a pro se petition for Writ of Error Coram Nobis with the Tallahatchie County Circuit Court on March 19, 1965, seeking relief from the sentences aforesaid because he was not afforded the services of an attorney, as required by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733, decided by the Supreme Court of the United States on March 18, 1963, several months after Woodruff entered his plea of guilty to the five indictments.

Woodruff also contended that the failure of the arresting officers to promptly carry him before a judicial officer or committing magistrate pursuant to Section 2473, Mississippi Code 1942, Annotated, Recompiled, without unnecessary delay, vitiated the sentences. The Court permitted him to proceed in forma pauperis and appointed able counsel to represent him.

An evidentiary hearing was held by the Court on September 17, 1965. At the conclusion of the hearing, the Court dismissed the petition and denied Woodruff any relief.

The Court appointed attorneys prosecuted on appeal to the Mississippi Supreme Court where the judgment of the lower court was affirmed June 13, 1966. Woodruff v. State, Miss., 187 So.2d 883.

Having exhausted his state remedies, Woodruff presented his petition for a writ of habeas corpus to this Court. The petition sets forth the same grounds for relief as were considered in the State Court proceedings.

In response to the petition, the defendant filed with his answer a complete transcript of state proceedings.

After a careful consideration of the record in the state court, the Court reached the conclusion that the material facts relating to the issue of whether Woodruff had the benefit of counsel

when he entered pleas of guilty to the several indictments had not been adequately developed at the state court hearing. In such a situation it became the duty of the Court to order an evidentiary hearing. Townsend v. Sain, 1963, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770, 786.

At the state hearing, the evidence showed that Woodruff was arrested on March 9, 1962 in Sunflower County and immediately carried to the Leflore County jail. Woodruff testified that he asked the Chief Deputy, whose name he thought was "Smith" for an attorney. The record does not show that this request was honored. Woodruff was confined in the jail until March 15, 1962, when he was carried to the Mississippi State Penitentiary at Parchman, Mississippi. Prior to his arrest in Sunflower County, Woodruff had been an inmate of the penitentiary serving a sentence from the Circuit Court of Grenada County, Mississippi. Woodruff had been granted an indefinite suspension of sentence and had been free for about 143 days when he was arrested on the charges involved in the case sub judice. Upon his arrest the suspension previously granted him was revoked, and he was returned to prison.

Woodruff remained at the prison until he was brought to Tallahatchie County to answer the charges set forth in the five indictments aforesaid. While in prison Woodruff sent for the District Attorney and Sheriff. When they came to see him, Woodruff told them that he was guilty of the charges and wanted to enter pleas of guilty, if he could receive sentences which would run concurrently.

Woodruff admitted in his testimony at the state hearing that he had been incarcerated in at least four prisons for a period of more than 35 years during his life, and had spent a great deal of his time studying and reading law. He was thoroughly familiar with the Gideon decision which had been handed down by the Supreme Court of the United States, after he had been sentenced by the Court, and before he presented his petition for a Writ of Error Coram Nobis. It was brought out that he personally prepared the suit papers, utilizing forms obtained from others, and such law books as were available.

Woodruff did not at any time, except on the one occasion above mentioned, request the assistance of an attorney, and such was not offered to him by the prosecuting attorney, the Court, or anyone else. Woodruff testified that he was without means with which to employ an attorney. Woodruff further stated that he knew that it was not customary in Mississippi to appoint counsel; that he had been denied an appointed attorney in every other court and that he did not request one on this occasion.[1]

Honorable Shed Hill Roberson and Honorable Semmes Luckett, two able attorneys of Clarksdale, Mississippi, notified the prosecuting attorney on the first day of the term that they interested in representing Scott, Woodruff's co-indictee. At a later day in the term Woodruff and Scott were brought to the courthouse in Sumner and carried to a conference room adjacent to the courtroom. The record shows that Mr. Roberson returned to the court on that time, and was present with the two defendants. Before the arrival of Mr. Roberson, Scott became apprehensive and Woodruff jokingly said "what in the world do you want a lawyer for".

When Mr. Roberson arrived at the courthouse he went to the conference room where Woodruff, Scott, the sheriff, district attorney and county attorney were present. Upon his arrival, the district attorney read each indictment to Woodruff and Scott, after which in re-

---

1. Prior to April 8, 1964, Mississippi Statutes did not provide for the appointment of counsel for indigent defendants in criminal cases except where a capital crime was involved. Section 2505, Mississippi Code, 1942, Annotated, Recompiled, Amended, Ch. 357, Laws 1964, effective from and after passage (approved April 8, 1964).

sponse to the district attorney's inquiry, they said they were guilty of the charges.

The state record reflects that Mr. Roberson was employed to represent Scott alone, and this fact was known to the district attorney. The district attorney testified, however, that the agreement to dispose of the cases constituted a package deal and that Woodruff was present when Mr. Roberson advised Scott, and understood that he was getting the same deal as Scott.

The trial court dictated into the record at the conclusion of the evidence that the record as a whole demonstrated that Mr. Roberson was not directly and personally representing Woodruff on the occasion, but that Woodruff was present during the conference between the district attorney, Mr. Roberson, and Scott, when the matters were discussed.

In his opinion the trial court held that the failure to immediately bring Woodruff before a magistrate was not prejudicial to him, since he was incarcerated in the penitentiary on other charges. As to the feature of the case pertaining to lack of counsel, the Court held that the record justified the finding that Woodruff was either represented by counsel or that he effectively waived any right to representation.

The Supreme Court of Mississippi, after a review of the record, affirmed the denial of the writ by the trial court and based the affirmance "on the fact that petitioner had the benefit of counsel and received the same sentence as Scott, and the fact that he is exceptionally well informed on criminal procedure and is a well educated and articulate person". Woodruff v. State, supra, 187 So.2d at pages 884 and 885.[2]

The record in the state proceedings shows that Woodruff was in Mr. Roberson's presence only one time. The record does not reflect the nature or extent of the conference between Mr. Roberson and Scott in which Woodruff participated. It appears from the record that the conference, if any, was held in the conference room adjacent to the courtroom in the presence of the sheriff and district and county attorneys. Mr. Roberson did not testify. Because of the incomplete record on this vital point, this Court ordered an evidentiary hearing on Woodruff's habeas corpus petition.

At the evidentiary hearing Woodruff elaborated on the facts in the case and introduced a letter written to him from Mr. Roberson, which was received in evidence by the Court without objection by defendant.

Mr. Roberson stated in his letter that he did not represent Woodruff or his co-indictee Scott; that his only purpose was to secure the best deal he could for

2. In *Woodruff* the court said:
"Since the decision in Gideon, this Court has applied it in several cases. Clarke v. State, 251 Miss. 627, 170 So. 2d 575 (1965); Conn v. State, 251 Miss. 488, 170 So.2d 20 (1964). The Legislature amended Mississippi Code Annotated section 2505 (Supp.1964), so as to provide that the trial courts may appoint counsel to persons charged with felonies. There is no doubt but that Gideon is retroactive.
We have carefully considered Gideon and the other cases announcing the federal standards concerning the right to counsel, including those pre-Gideon cases when the Sixth Amendment guarantees were applied by the federal courts only in federal cases, and the later cases applying these standards to state prosecutions. We are of the opinion that because

of the unusual circumstances involved, it cannot be said that petitioner was either deprived of the benefit of counsel, or that he would have accepted counsel to represent him if an actual offer of counsel had been made. We are aware that at the time petitioner entered his guilty plea, it was not customary to provide counsel in cases less than capital. The trial court held, in effect, that petitioner not only had the benefit of counsel, but that he intelligently and competently waived any rights he may have had to counsel designated as his own. Our affirmance is based on the fact that petitioner had the benefit of counsel and received the same sentence as Scott, and the fact that he is exceptionally well informed on criminal procedure and is a well educated and articulate person."

Mrs. Scott; and that both Woodruff and Scott were advised as to his position. Mr. Roberson recalled that Woodruff, while in the State Penitentiary at Parchman, wrote him a letter about representing him, but that he (Roberson) was advised by the superintendent of the institution that he could not see Woodruff, unless he was Woodruff's attorney. Since Mr. Roberson and Woodruff had not had the opportunity to confer and make arrangements for the representation, Mr. Roberson could not assure the superintendent that he was in fact the attorney for Woodruff, Mr. Roberson was not permitted to confer with or see Woodruff.[3]

The case of Scott v. State, 1966, Miss., 190 So.2d 875, involves Woodruff's co-indictee. Scott was indicted on two charges of burglary by the Grand Jury of Leflore County. He plead guilty to both charges during the May 1962 term of the court and was sentenced to serve a term of seven years on each count, the terms to run concurrently. On November 8, 1965, Scott filed his petition for Writ of Error Coram Nobis, alleging that at the time of his pleas of guilty, he was without counsel and without funds to employ a counsel. The hearing on the petition was held on November 17, 1965, and the Circuit Court denied the petition, and Scott perfected an appeal to the Supreme Court.

It is noted that Woodruff's petition in the case sub judice was filed March 19, 1965, and the hearing held on September 17, 1965. The record herein also reflects a connection between the indictments against Scott and Woodruff in Tallahatchie County, and the indictments in Leflore County involved in Scott, supra.

The district attorney of Tallahatchie County testified in the case sub judice that the district attorney from Leflore County had already called him before Mr. Roberson and Mr. Luckett came to the court on the first day of the term, at which the pleas of guilty were entered, and advised him that the same defendants were being held in Leflore County on a similar charge; that Mr. Roberson

3. The pertinent part of Mr. Roberson's letter is: "I do recall that you wrote me a letter about representing you, and I talked to the Superintendent and he advised me that the only way I could see you would be if I were your attorney. I explained to him that we had not talked and I did not know whether you would be able to get up a fee, and, therefore, I was not then your attorney, but you had requested that I talk to you relative to representing you. · Under the rules then existing, he could not permit me to see you unless I had already agreed to be your attorney. I have read the decision in your case which was handed down by the Supreme Court on June 13, 1966, and I have also reread the Earl E. Scott case which was handed down by the Supreme Court on October 17, 1966.

I testified in the Circuit Court, as reported in Scott v. State, 190 So.2d 875, that Mr. Luckett and I were representing Mrs. Lorena Scott, having having been employed by her sister; that in the course of our representation, we did work out a compromise for defendant Scott. In substance, my testimony was as follows:

'We were trying to work a compromise where Mrs. Scott would not be prosecuted. We advised Mr. Scott at the time that we were not representing him but that if he would plead guilty to certain charges, principally the one in Leflore County and at least one other in another county, then the Prosecuting Attorney had agreed that he would either remand her case to the files or dismiss it or nolpros it. He finally agreed to that.'

As I recall, after you heard that we had worked out a compromise with Scott, you asked if we would ask the District Attorney if he would give you the same compromise.

If I were called in your case, I would testify to the same thing as I did in the Scott case—mainly to the effect that I did not represent you or Earl Scott; that my only purpose was to secure the best deal I could for Mrs. Scott, and that both you and Earl Scott were advised that that was our position.

I do recall that you asked me if Mississippi would appoint you an attorney, and I told you (this was before Gideon v. Wainright) that the State of Mississippi would not appoint attorneys for crimes where less than capital punishment could be given."

and Mr. Luckett would see him about the matter; and that they were interested only in Scott. When Mr. Roberson came to court on the day upon which the pleas were entered the district attorney testified that he understood Mr. Roberson and Mr. Luckett represented Mr. Scott only, that the whole thing was a package deal, that Woodruff was present all of the time during which Mr. Roberson was advising Scott, and that Woodruff knew he was getting the same deal as Scott was getting under advice from Mr. Roberson.

4. In *Scott* the Mississippi Supreme Court said:

"At the same term of court to which the indictment against appellant was returned, the appellant's wife, Lorena Scott, was also indicted as an accessory after the fact to the crime of burglary. Appellant's sister-in-law employed Honorable Shed Hill Roberson and Honorable Semmes Luckett to represent Mrs. Lorena Scott, her sister and the appellant's wife. The two attorneys were not employed to represent appellant and did not do so. The law firm of Roberson and Luckett had represented the appellant in the past on some criminal charges against him. One or both of these attorneys consulted with the appellant and his wife on some five to ten occasions after the indictments were returned. The Defendant, Earl Scott, was advised by Mr. Roberson 'that at that time Mississippi was not appointing counsel for felonies less than capital crimes.'

At the hearing on the petition for writ of error coram nobis, Mr. Roberson testified that:

'We were trying to work a compromise where Mrs. Scott would not be prosecuted. We advised Mr. Scott at the time that we were not representing him but that if he would plead guilty to certain charges, principally the one in Leflore County and at least one other in another county, then the Prosecuting Attorney had agreed that he would either, remand her case to the files or dismiss it or nolpros it. He finally agreed to that.'

Mr. Roberson was also asked this question: 'In your opinion, did Mr. Scott himself have any effective representation of counsel?' He responded, 'Only on the basis of the facts I recited from the witness stand. We did consult with him. We did tell him what it would take on his part to get Mrs. Scott out from under the charge against her.'

The Court can only conclude that the Leflore County conviction of Scott was a part and parcel of the package deal, and that Woodruff's case must be considered in that light.

The Mississippi Supreme Court on Scott's appeal reversed the judgment of the trial court, sustained the Petition for Writ of Error Coram Nobis, set aside and vacated the original judgment and remanded the case to the lower court for arraignment and trial of Scott. This Court can do no less for Woodruff, since essentially the facts are the same.[4]

It is now firmly established that an indigent defendant charged with a felony is entitled to be represented by counsel. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Clarke v. State, 251 Miss. 627, 170 So.2d 575 (1965); Hogue v. State, 253 Miss. 667, 178 So.2d 677 (1965); and Conn v. State, 251 Miss. 488, 170 So.2d 20 (1964).

This is true whether the defendant pleads guilty or is tried on a not guilty plea. Harvey v. State of Miss., 340 F.2d 263 (5th Cir. 1965); Martin v. Warden, La. State Penitentiary, 234 F.Supp. 495 (E.D.La.1964).

The uncontradicted testimony in this case is that the defendant was indigent and that he was not represented by counsel.

This fundamental right, to have the assistance of counsel for his defense guaranteed to the defendant by the Sixth and Fourteenth Amendments to the Constitution of the United States, was not granted the defendant. The fact that his wife did have very competent counsel, who included the defendant in their conferences with his wife, does not satisfy this mandatory requirement of the Constitution.

Under the circumstances of this case, the interests of the defendant and his wife were antagonistic, and it would be impossible for attorneys, who were employed solely to defend his wife, to also defend him with all good fidelity.

Because the defendant did not have the assistance of counsel for his own defense and because this fundamental right was not competently and intelligently waived by the defendant, the judgment of the trial court must be reversed, the petition for writ of error coram nobis sustained, the original judgment on the pleas of guilty to the crime of burglary vacated

■ The Supreme Court of the United States held in *Gideon*, supra "The Sixth Amendment provides, 'In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence'. We have construed this to mean that in federal courts counsel must be provided for defendants unable to employ counsel unless the right is competently and intelligently waived". 372 U.S. 339, 83 S.Ct. 794, 9 L.Ed.2d 802. Gideon extended this rule to state prosecutions.[5]

When Mr. Roberson conferred with Scott, it must be conceded that Mr. Roberson represented Scott's wife, and that it was for her best interest that Scott plead guilty. This opened the avenue for Mrs. Scott's release. In affirming the lower court's denial of Woodruff's petition, the Mississippi Supreme Court bottomed its decision on the fact that Woodruff had the benefit of counsel and received the same sentence as Scott. Mr. Roberson's statement was not a part of the record in the state proceedings and the Mississippi Supreme Court did not consider the facts therein contained while considering the constitutional rights of Woodruff. Thus, it was unknown to the court that Mr. Roberson represented Mrs. Scott and did not represent Scott and that Mrs. Scott's interest was adverse to that of her husband. It appears reasonable to assume that if the Mississippi Supreme Court had been informed of these facts, its decision on Woodruff's appeal would have been the same as the decision on Scott's appeal from his conviction in Leflore County, Scott v. Mississippi.

Woodruff did not ask the trial court to appoint counsel, and none was appointed for him at the time. Mississippi law did not provide for the appointment of counsel in cases less than capital. *Gideon* had not been decided at the time. It cannot be gainsaid that Woodruff did not know he had a federally protected right to counsel. Under these conditions

and set aside, and this case remanded to the Circuit Court for arraignment and trial of defendant." (Miss., 190 So.2d 875, 876).

5. The court used language in *Gideon* which is especially appropriate in Woodruff's case. In speaking of Woodruff's intelligence the Mississippi Supreme Court said:

"Petitioner is sixty-two years of age, and his attorneys say he is a pathological thief, having spent about thirty-five years of his life in prisons. It is clear from the record that petitioner is highly intelligent. He spends ninety per cent of his time reading, and has studied criminal law for the last twenty five or thirty years. He prepared his own application for writ of error coram nobis and all other necessary motions and affidavits. His familiarity with criminal law procedure, as well as the quality of his mind, is reflected in these self?prepared documents." (187 So.2d 884).

The intelligence and aptitude attained by Woodruff while incarcerated in prison a greater portion of his life, came as the result of reading such law books as were available to him. The evidence shows that he obtained forms from others to use in preparing the pleadings in his case.

The appropriate language in *Gideon* appears on page 344 of 372 U.S., on page 797 of 83 S.Ct., on page 805, 9 L.Ed. 2d, and is as follows:

"A defendant's need for a lawyer is nowhere better stated than in the moving words of Mr. Justice Sutherland in Powell v. Alabama [287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158]:

'The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.' "

Woodruff could not have knowingly and willingly waived the right to counsel.

Courts will indulge every reasonable presumption against a waiver of fundamental constitutional rights and will not presume acquiescence in their loss. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466. It is axiomatic that unless a defendant is fully aware of a constitutional right, he cannot effectively waive it. Santos v. United States, 7 Cir., 1969, 417 F.2d 340.[6]

In Harvey v. Mississippi, 5 Cir. 1965, 340 F.2d 263, the Fifth Circuit considered a case where the defendant admitted his guilt and appeared voluntarily before the Mississippi Justice of the Peace Court and entered a plea of guilty. In the case sub judice Woodruff sent for the district attorney and sheriff and when they came to see them he said he wanted to plead guilty providing the sentences on the charges would run concurrently. Woodruff later lived up to his promise and plead guilty. Woodruff's case and Harvey's case are similar. In Harvey, the court granted the writ and said:

"Waiver of such right to counsel cannot be presumed from the mere fact that the accused appeared without counsel or failed to request counsel. Carnley v. Cochran, 1962, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70; Doughty v. Maxwell, 1964, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650. And the Second Circuit Court of Appeals, sitting en banc, recently held that 'the failure to advise a defendant of his right to

counsel will invalidate a plea of guilty even in the absence of a showing of prejudice' in both state and federal cases. United States ex rel. Durocher v. LaVallee, 2 Cir. 1964, 330 F.2d 303, 308, cert. denied 377 U.S. 998, 84 S.Ct. 1921, 12 L.Ed.2d 1048."

The federally protected right to counsel does not depend upon a request therefor. Counsel must be furnished an accused, whether or not the accused requests the appointment of counsel, unless such is knowingly and voluntarily waived. Carnley v. Cochran, 1962, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70.

Mr. Roberson was frank to say that he and Mr. Luckett represented Mrs. Scott and that they were acting in her behalf in arranging the package deal for Scott and Woodruff to plead guilty in order to have the charges against Mrs. Scott dismissed. It is at once clear that the interest of their client was adverse to that of Woodruff. Under such circumstances, even if Mr. Roberson had undertaken to advise Woodruff, it cannot be said that Woodruff had the benefit of effective counsel, measured by Federal Standards. Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

It is apparent from the record and evidence herein that Mr. Roberson did not at any time undertake to represent Woodruff, and was never under any obligation to advise or counsel with him. Mr. Roberson's appearance in the case was solely for the benefit of his client, Mrs. Scott.

In sum the Court holds that Woodruff was not afforded the assistance of

---

6. In *Santos* the court said:
   "It is axiomatic that 'unless the defendant is fully aware of a constitutional right, he cannot effectively waive it.' United States v. Rosenson, D.C.E.D. La., 291 F.Supp. 874, 878 (1968). See also Fay v. Noia, 372 U.S. 391, 439–440, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and United States ex rel. O'Connor v. State of New Jersey, 3 Cir., 405 F.2d 632, 634 (1969). Under the circumstances of the instant case, there is no reason to believe Santos knowingly waived a constitutional right which evolved subsequent to his trial and appeal. Defendants should not be required to anticipate favorable Supreme Court rulings 'or compelled to make the futile gesture of raising the privilege at trial to preserve their rights in the event of * * * [a favorable forthcoming] decision.' United States v. Manfredonia, 2 Cir., 391 F.2d 229, 230 (1968)." (417 F.2d 345).

counsel for his defense, a right to which he was entitled under the Sixth Amendment to the Constitution of the United States, being an indigent person and unable to employ counsel; that Woodruff did not competently and intelligently waive the right to counsel, and the State of Mississippi must afford him a new trial on the five indictments, above mentioned.

■ Woodruff's contention that the failure of the arresting officers to promptly carry him before a judicial officer or committing magistrate pursuant to Section 2473 (1956) Mississippi Code 1942, Annotated, Recompiled, without necessary delay vitiates the convictions and sentences is without merit. Woodruff was lawfully confined to the Mississippi State Penitentiary, where he was carried a few days after his arrest, until he was brought before the Court to answer the indictments. Woodruff did not suffer any prejudice, occasioned by the delay. In Re Woodruff's Petition, 253 Miss. 827, 179 So.2d 268; Harper v. State, 1965, 251 Miss. 699, 171 So.2d 129 and Dunning v. State, 1965, 251 Miss. 766, 171 So.2d 315.

Woodruff should be freed from any further restraint against his liberty because of the convictions and sentences aforesaid, and released from further liability as to the same, unless within six months from the date of the entry of the order herein, the State of Mississippi affords him the right to a new arraignment and trial on each of said charges, at a time when he has the assistance of effective counsel.

An appropriate order will be entered by the Court.

### ORDER GRANTING WRIT

This action came on for hearing before the Court, and the issues having been duly heard and a decision having been duly rendered, it is

Ordered and adjudged:

1) That the conviction and sentence of petitioner E. L. Woodruff on each of the indictments returned by the Grand Jury in and for the Second District of Tallahatchie County, State of Mississippi, in Causes Numbers 2050½, 2051, 2052, 2053 and 2054, in each of which indictments said petitioner has been charged with the crime of Burglary and Grand Larceny, shall be and the same hereby are vacated and set aside;

2) That petitioner E. L. Woodruff, in whose behalf the writ of habeas corpus was sued out, is illegally restrained of his liberty by defendant, on commitments issued by the Clerk of the Circuit Court of Tallahatchie County, State of Mississippi, in each of the above numbered causes, as alleged in said petition, and that petitioner shall hence go forth without delay and without further liability as regards said charges unless the State of Mississippi shall within six months from the date of the entry of this order cause petitioner to be carried before the Circuit Court for the Second District of Tallahatchie County, State of Mississippi, and afforded re-arraignment and a new trial on each of said charges with the assistance of effective counsel for his defense;

3) That the petitioner may be detained by proper state authorities for a period of six months from and after the date of the entry of this order, unless petitioner shall enter into good and sufficient bail for his appearance before the court aforesaid to answer said charges within said period, the amount to be fixed and the sureties to be approved as provided by applicable statutes of the State of Mississippi; provided, however, if petitioner is not afforded effective counsel, re-arraignment and a new trial on each of the indictments aforesaid within said period of time, petitioner shall be released from confinement without delay, at the termination of said period, and shall be freed from any further liability on each of said indictments;

4) That a certified copy of this order and the opinion of the Court this day filed shall be sent by certified mail to petitioner and to counsel of record for defendant;

5) That petitioner shall recover his costs to be taxed.