# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-01948-SCT

*REGINALD DESHAWN BRADLEY*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT: 11/13/2009
TRIAL JUDGE: HON. JAMES T. KITCHENS, JR.
COURT FROM WHICH APPEALED: LOWNDES COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: OFFICE OF INDIGENT APPEALS
    BY: JUSTIN TAYLOR COOK
        LESLIE S. LEE
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
    BY: JOHN R. HENRY, JR.
DISTRICT ATTORNEY: FORREST ALLGOOD
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 03/31/2011
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1. Following his indictment for third-offense felony shoplifting, Reginald DeShawn Bradley proceeded to trial in the Circuit Court of Lowndes County, Mississippi, represented by court-appointed counsel. At trial, Bradley moved to represent himself. Pursuant to Uniform Circuit and County Court Rule 8.05, the circuit court examined Bradley and informed him of the risks of *pro se* representation. *See* URCCC 8.05. Thereafter, the circuit court allowed Bradley to represent himself, with his appointed counsel ordered to act as "standby counsel." From Bradley's subsequent conviction and sentence to five years

imprisonment in the custody of the Mississippi Department of Corrections ("MDOC"), and the denial of his post-trial motions, proceeds the present appeal.

**FACTS**

¶2.     Bradley was indicted for third-offense felony shoplifting under Mississippi Code Section 97-23-93. *See* Miss. Code Ann. § 97-23-93 (Rev. 2006). Thereafter, counsel was appointed for Bradley, and the matter was set for trial on November 12, 2009.

¶3.     At trial, following voir dire, Bradley informed the circuit court that he "wanted to speak on [his] own behalf. I want to cross-examine myself." Bradley's appointed counsel advised the circuit court that Bradley had "a plethora of motions . . . that are usually filed pre-trial and during trial and post-trial, all prepared . . . and I've advised him that what he needed to do was tell you that he wanted to act as his own attorney. . . . [F]or an example, he wanted to file a motion for summary judgment . . . ." After examining Bradley and informing him of the dangers and risks of *pro se* representation, consistent with Uniform Circuit and County Court Rule 8.05, the circuit court permitted Bradley to represent himself. *See* URCCC 8.05. Bradley's appointed counsel was ordered to act as "standby counsel."

¶4.     Following Bradley's unsuccessful efforts to exonerate himself, he was convicted and sentenced to five years imprisonment in the custody of the MDOC. After the denial of his post-trial motions, Bradley filed notice of appeal.

**ANALYSIS**

¶5.     On appeal, Bradley asserts that the circuit court erred: (1) in allowing him to represent himself; (2) in failing to inform properly him of his right to counsel; and (3) in failing to

obtain a knowing and voluntary waiver of his right to counsel in violation of the Sixth

Amendment to the United States Constitution. *See* U.S. Const. amend. VI.

¶6.     In support of his position, Bradley first cites ***Conn v. State***, 170 So. 2d 20 (Miss.

1964), which provided that:

> "[w]hile an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." [***Johnson v. Zerbst***, 304 U.S. 458, 465, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1937)]. . . . In accordance with these mandatory decisions we hold that there must be an intelligent and competent waiver of counsel by the defendant and that the trial court should so determine, and further, that such determination, as well as the facts on which it is based, should appear on the record.

***Conn***, 170 So. 2d at 23 (other citations omitted). Bradley further cites ***Faretta v. California***,

422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), for the proposition that "[w]hen an

accused manages his own defense, he relinquishes, as a purely factual matter, many of the

traditional benefits associated with the right to counsel. For this reason, in order to represent

himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits."

*Id*. at 835. Finally, Bradley cites Uniform Circuit and County Court Rule 8.05, which

requires that:

> [w]hen the court learns that a defendant desires to act as his/her own attorney, the court shall on the record conduct an examination of the defendant to determine if the defendant knowingly and voluntarily desires to act as his/her own attorney. The court shall inform the defendant that:
>
> > 1. The defendant has a right to an attorney, and if the defendant cannot afford an attorney, the state will appoint one free of charge to the defendant to defend or assist the defendant in his/her defense.

2. The defendant has the right to conduct the defense and that the defendant may elect to conduct the defense and allow whatever role (s)he desires to his/her attorney.

3. The court will not relax or disregard the rules of evidence, procedure or courtroom protocol for the defendant and that the defendant will be bound by and have to conduct himself/herself within the same rules as an attorney, that these rules are not simple and that without legal advice his/her ability to defend himself/herself will be hampered.

4. The right to proceed pro se usually increases the likelihood of a trial outcome unfavorable to the defendant.

5. Other matters as the court deems appropriate.

After instructing the defendant and ascertaining that the defendant understands these matters, the court will ascertain if the defendant still wishes to proceed pro se or if the defendant desires an attorney to assist him/her in his/her defense. If the defendant desires to proceed pro se, the court should determine if the defendant has exercised his right knowingly and voluntarily, and, if so, make the finding a matter of record. The court may appoint an attorney to assist the defendant on procedure and protocol, even if the defendant does not desire an attorney, but all disputes between the defendant and such attorney shall be resolved in favor of the defendant.

URCCC 8.05.

¶7.    Bradley cites the correct law and rule. But a review of the record reveals that the circuit judge exhibited a keen awareness of the law and rule, and properly applied both. The record reflects that Bradley knew that he had a right to counsel, as counsel had been appointed to represent him. Furthermore, Bradley knew that his court-appointed counsel was representing him both before and after Bradley elected to manage his own defense, expressly agreeing to counsel's continued assistance, by stating, "I don't mind him just being there, being a standby counsel . . . ." Finally, the trial transcript validates the circuit court's compliance with the law and rule, as noted:

BY THE COURT: . . . Now, do you want to represent yourself? Is that what you're telling me? And have Mr. Goodwin as standby counsel?

4

. . .

BY THE DEFENDANT: I can – I will – yeah, I prefer to.  I think I'll help myself better . . . .[1]

. . .

BY THE COURT: . . . Now, let me tell you this, just so you'll know: I've been involved in a lot of trials in my lifetime.  I was an assistant district attorney, and since then I've been a judge.  I have never seen anybody represent themselves and win.

BY THE DEFENDANT: That don't make no difference.  I'm not worried about that.[2]

. . .

BY THE COURT: Let me ask you a few questions.  How far did you go in school?

. . .

BY THE DEFENDANT: Well, I went to the ninth [grade], but I was going to the tenth [grade].  I dropped out – I passed the ninth and went to the tenth, but I dropped out in the tenth.

BY THE COURT: Okay.  You can read and write; is that correct?

BY THE DEFENDANT: Uh-huh (Indicating an affirmative response.)  Very well.

BY THE COURT: Do you know anything about the Rules of Evidence or any of those kind of rules that you're going to have to know when we're trying this case?

BY THE DEFENDANT: Not 100 percent.  I know enough where I'm speaking upon – on my – I'm just – I want my motion to be heard and just speak about on my motions, but as far as evidence, putting evidence forward, ain't no

---

[1]*See* URCCC 8.05(1) & (2).

[2]*See* URCCC 8.05(4).

5

evidence I'm really going to put forward. I'm just basically saying what they got is plainly circumstantial, and [C]onfrontation [C]lause plainly states that – that you can't . . . .

¶8. After the circuit court addressed Bradley's various motions, granting some and denying others, its examination of Bradley continued, as follows:

BY THE COURT: . . . Well, that's why I think it's better if you let Mr. Goodwin try this case, instead of you. I mean you wrote all these motions, right? Did you do these?

BY THE DEFENDANT: Uh-huh (Indicating an affirmative response.)

BY THE COURT: Well, you're not dumb, I can tell that, but the problem is I don't think you understand the [C]onfrontation [C]lause in . . . [*Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)] well enough to . . . understand the nuances of that case. Now, if you want to represent yourself, I think you can. You're not . . . stupid, you're not . . . mentally retarded.

. . .

BY THE DEFENDANT: . . . I'm trying to get the case down pat, because I'm looking – I'm looking at this, common sense will tell you I'm not guilty. I didn't steal nothing, ain't nobody about seen me steal nothing.

. . .

BY THE DEFENDANT: -- everything is plainly he say, she say.

BY THE COURT: Okay.

BY THE DEFENDANT: Ain't . . . nobody got nothing for me. Ain't nobody got no camera, ain't got nothing.

BY THE COURT: Mr. Bradley, juries have to hear that, and we have to have evidence. And if there's no evidence, then I'm going to turn you loose. But if there's evidence, then a jury gets to make the decision.

BY THE DEFENDANT: All right.

. . .

6

BY THE COURT: If you want to try this case, I'm going to have to hold you – you need to understand, I've got to hold you to the same rules as if you're an attorney. And if you're doing something –

BY THE DEFENDANT: Could you give me some . . . rules or . . . you know, just some fine point rules that I can –

BY THE COURT: No, sir, I can't.

BY THE DEFENDANT: . . . . I'm saying what you going to tell me not to do.

BY THE COURT: No, sir, I can't do that, because I couldn't do that for the State and I couldn't do that if Mr. Goodwin was trying the case.

BY THE DEFENDANT: Well, I still . . . want – it don't make no difference, I want to –

BY THE COURT: You need to understand –

BY THE DEFENDANT: I'd rather go pro se. I just want to go pro se. It don't make no difference.

BY THE COURT: I can't help you. Now Mr. Goodwin can –

BY THE DEFENDANT: I understand. I'll go pro se. It don't make no difference . . . .[3]

. . .

BY THE COURT: . . . Now, you're going to listen. I cannot favor one side or the other. Mr. Goodwin will be here to help you to try this case. If you want to ask him about objections and things like that, he will help you. I think you're making a mistake if you try this case by yourself. Mr. Goodwin is an excellent trial lawyer, and he'll do an excellent job for you. If you insist on defending yourself, I will let you . . . .

The circuit court further stated that while Bradley could proceed *pro se*, his appointed counsel would act as "standby counsel."

---

[3] *See* URCCC 8.05(2), (3), & (4).

¶9.    Following a lunch break, Bradley again reiterated that he wished to represent himself, as follows:

> BY THE COURT: Your lawyer will help you, if you let him help you. Have you decided, do you . . . want to argue this case and examine the witnesses and things like that?
>
> BY THE DEFENDANT: Yes, sir.
>
> BY THE COURT: And you understand the difficulty in representing yourself and all of that. I've talked to you about that, right?
>
> BY THE DEFENDANT: Yes, sir.
>
> BY THE COURT: And it's a decision that you're freely making?
>
> BY THE DEFENDANT: Yes, sir.
>
> BY THE COURT: All right. Mr. Goodwin, have you discussed with Mr. Bradley the difficulties of self-representation?
>
> BY MR. GOODWIN: Yes, sir. At the appropriate time when the evidence comes in, though, I will tell him object, I will tell him why.
>
> BY THE COURT: All right.
>
> BY MR. GOODWIN: You know, and that's all I can really do at this point.
>
> BY THE COURT: Well, the Supreme Court has indicated unless I believe he's not competent, and he's – while argumentative, I have no reason to believe that he's delusional or any other indication. He has filed motions . . . with the Court that shows that he's, you know, not totally –
>
> BY MR. GOODWIN: He understands the theory of the objections that I would make at trial.
>
> BY THE COURT: Yes, sir.
>
> BY MR. GOODWIN: He doesn't understand the Constitutional or the rule basis on it, so I will just tell him to object.
>
> BY THE COURT: Fair enough. All right.

. . .

BY MS. CLEMONS: So Your Honor, for clarification, Mr. Bradley will be handling both opening and closing as well?

BY THE COURT: Is that right, Mr. Bradley? You're going to do the opening statement and the closing argument?

BY THE DEFENDANT: Yeah.  Basically, I got my closing argument down pat, but I'm just going to – just speak out the mind on the opening part.

¶10.    The aforementioned transcript excerpts unequivocally reveal that the circuit court abided by our law and the requirements of Uniform Circuit and County Court Rule 8.05. *See* URCCC 8.05.  Bradley made a knowing and intelligent waiver of his Sixth Amendment right to assistance of counsel.

## CONCLUSION

¶11.    Accordingly, this Court affirms the final judgment and sentence of the Circuit Court of Lowndes County as to Bradley.

¶12.    **CONVICTION OF THIRD-OFFENSE SHOPLIFTING AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. APPELLANT SHALL PAY RESTITUTION IN THE AMOUNT OF $42.21, A FINE OF $200.00 AND ALL COURT COSTS.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.**