629 So.2d 558 (1993)
James C. METCALF
v.
STATE of Mississippi.
No. 90-KA-1227.
Supreme Court of Mississippi.
December 9, 1993.
*559 Wallie S. Stuckey, Jr., Greenwood, for appellant.
Michael C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
McRAE, Justice, for the Court:
James C. Metcalf was convicted in the Circuit Court of Humphreys County of uttering forgery and was sentenced to a term of fifteen (15) years in custody of the Mississippi Department of Corrections. From this conviction and sentence he appeals, alleging ineffective assistance of counsel and lack of an intelligent and knowing waiver of the right to counsel. Finding that the trial court correctly balanced the defendant's right to represent himself with the right to counsel, thereby establishing a hybrid representation, and finding no other error, we affirm.

FACTS
On August 5, 1989, Metcalf forged three checks stolen from a veterinary clinic in Belzoni where he was employed as a janitor. As Metcalf presented a $700.00 check to a liquor store, the store clerk told Metcalf that he did not have enough money to cash the check, and Metcalf left. Through the store clerk's own investigation, he became aware that the check was unauthorized and notified the police. Metcalf later returned to the store and attempted to cash the check again. When the clerk informed him that he knew the check was forged, Metcalf fled the store. Later that day, Metcalf was successful in cashing a $400.00 check at a grocery store and a third check at a department store. Following his check-cashing spree, Metcalf escaped to Tennessee but was later apprehended, arrested and brought back to Mississippi by Belzoni Police officials for trial.
The court appointed Attorney, W.C. Trotter, III, served as counsel for Metcalf. Metcalf is no stranger to the legal system; the record indicates that since 1956, he has been in court on at least a dozen occasions charged with forgery, burglary and larceny. At the arraignment, on February 15, 1990, Metcalf appeared before the judge with counsel. Trotter indicated that Metcalf had previously told him that he was attempting to locate private counsel and if he could not, he might wish to represent himself. At that time, Metcalf also informed the court that he was under psychiatric care and medication and requested an examination by Region VI Mental Health Center to determine his competency to stand trial. The judge did not relieve Trotter from representation at that time.
Four days later, the defendant, acting as his own counsel, filed an oral motion for previous psychiatric records to be subpoenaed. The court noted that Metcalf was representing himself with the assistance of *560 Attorney Trotter in its February 19, 1990 order. The court's order directed that a mental examination be conducted by Region VI Mental Health in Greenwood, Mississippi to determine if Metcalf could continue to represent himself and also whether he was mentally competent to stand trial. The judge informed Metcalf that Trotter would continue to be available to advise him on any matter. The judge further admonished Metcalf that the witnesses would be subpoenaed if he would give the names and addresses to Trotter. The records reveals:
BY THE COURT: Well now you had indicated last week you wished to get another lawyer to represent you. Have you done that?
BY MR. METCALF: I still ... I made ... I sent a notice to that lawyer today, today by one of the deputy's secretary. She said that she would give it to her. She supposed to be back today so I don't know, I'm still trying to make contact with her.
BY THE COURT: All right. If you don't, the Court has appointed Mr. Trotter here to represent you, and . ..
BY MR. METCALF: All right. Now we're working together now?
BY MR. TROTTER: I'll be available to advise ...
BY THE COURT: Yes, sir.
BY MR. TROTTER: Mr. Metcalf on anything ...
BY THE COURT: Yes, sir... .
Subsequently, on March 26, 1990, the trial court entered an order for a psychiatric examination at the Mississippi State Hospital at Whitfield to determine if Metcalf was able to represent himself as well as if he was mentally competent to stand trial. This order was filed after the court was notified that, pending the Region VI Mental Health examination ordered on February 19, 1990, Metcalf attempted to file commitment papers on himself in the Chancery Court of Humphreys County, Mississippi and attempted to set fire to his jail cell. In a letter dated June 29, 1990, Dr. Maggie Lancaster, Director of Forensic Service at the Mississippi State Hospital at Whitfield, advised the trial court of her findings after a psychiatric examination of Metcalf. Dr. Lancaster concluded that Metcalf was competent to stand trial, knew the difference between right and wrong in relation to his actions at the time of the crime charged, and was capable of conferring with an attorney. The case proceeded to trial on July 27, 1990. When Metcalf learned that the witnesses he had planned to call would not be testifying because they had not been subpoenaed, the following colloquy took place:
BY THE COURT: Well, you see, Mr. Metcalf, that's the need  reason you needed some expert advice. You needed some advice from an attorney to handle that for you and you refuse.
BY MR. METCALF: No, he [Trotter] was working along with me.
BY THE COURT: No. He  you refused that before me very emphatically on two or three occasions, and the Court suggested that to you that you needed it and that I was going to have him available at any time you wanted to call him. And I've got him coming over here today and I'll have him sitting there with you. But now you have come up here the morning of trial  he's been  he has not done any preparation. He hasn't interviewed any witnesses. You haven't told him of the witnesses you wanted.
BY MR. METCALF: Yes, I have.
BY THE COURT: When? Yesterday?
BY MR. METCALF: No, he just came yesterday. I've seen him several times and told him I wanted these witnesses, but he just came yesterday and made out the subpoena.
* * * * * *
BY THE COURT: Well, this whole mess is your fault. It's not mine. It's not Mr. Trotter's, because he was available to you and would have prepared himself and prepared you for this trial if you had just indicated that you wanted him, and you told me you didn't want him and wasn't going to consult with him and all of that, and I suggested to you on I know two occasions that this was not wise.
* * * * * *

*561 BY THE COURT: But you remember me cautioning you and telling you that you needed a lawyer.
BY MR. METCALF: No, I remember you asking me  Attorney Trotter say did I have a desire to represent myself  to hire an attorney. I said I had tried to get an attorney.
BY THE COURT: And you told me you didn't want Mr. Trotter.
BY MR. METCALF: Well, I said that if necessary I would represent myself. Those are my words.
BY THE COURT: All right. All right. Anyway 
BY MR. METCALF: But I never have refused his assistance, and I've always asked him to help me to prepare for the trial, and he can tell you the same thing.
At that point, the Sheriff advised the trial court that Trotter had visited Metcalf "a week or so ago" and that "[t]hey went into a back room and talked." Thereafter, this discussion took place:
BY MR. METCALF: He [Trotter] came and asked me, said, "The judge wanted me to tell you that you could represent yourself," and he said, "But I'll be there with you," and he said that, "State's attorney wanted to know what kind of plea you wanted," that's the only thing he talked about. I been telling him  I been persistent in trying to get my witnesses in time for trial. He just came over yesterday and said  he said that the State's attorney sent him over to see about what witnesses to call. I didn't understand that.
BY THE COURT: Well, no she did that at my request to save me a telephone call when I was in Greenwood.
BY MR. METCALF: I been trying to get these witnesses ever since this thing started.
BY MS. BRIDGES: Judge, I do know that Mr. Metcalf has had ample communication through the sheriff's department, and any time he wanted witnesses, all he had to do was send a list of them.
BY THE COURT: That's all. And your refusing to accept any legal advice has got you in the predicament you're in this morning, and I'm going to put you to trial.
Metcalf's motion for a continuance was denied and he was then called upon to represent himself. At trial, Dr. Helen Robertson, a clinical psychologist at the Mississippi State Hospital, testified that she had obtained medical records from other doctors whom Metcalf claimed to have seen, believing they would give her substantial insight into his condition. She stated, however, that some of the institutions where Metcalf claimed to have been treated had never heard of him and had no record whatsoever of his treatment. Ultimately, Metcalf was diagnosed as "malingering" and as having an "anti-social personality disorder." Dr. Robertson explained that he was diagnosed as "malingering" because several of the experts who had evaluated Metcalf believed he was feigning symptoms of mental illness. She further explained that persons diagnosed as having an "anti-social personality disorder" are those who "know what the rules are; they just don't care."
The jury returned a verdict of guilty, and on July 27, 1990, the trial court sentenced Metcalf to a term of 15 years. The trial court appointed W.S. Stuckey to represent him on his motion for a new trial and appeal. His motion was denied. For the first time on appeal, Metcalf raises the issues of ineffective assistance of counsel and lack of a knowing and intelligent waiver of counsel.

DISCUSSION OF THE LAW

I.
There is no record that any of the issues Metcalf presents on appeal were raised before the trial court. His motion for a new trial set forth only two grounds: (1) the verdict was against the overwhelming weight of the evidence, and (2) any other reasons that were to be brought up at a hearing on this matter. On a motion for a new trial, certain errors must be brought to the attention of the trial judge so that he may have an opportunity to pass upon their validity before this Court is called upon to *562 review them.[1]Weyen v. Weyen, 165 Miss. 257, 139 So. 608 (1932). For example, the denial of a continuance in the trial court is not reviewable unless the party whose motion for continuance was denied makes a motion for a new trial on this ground. See King v. State, 251 Miss. 161, 168 So.2d 637 (1964); Cherry v. Hawkins, 243 Miss. 392, 137 So.2d 815 (1962); Lamar v. State, 63 Miss. 265 (1885).
Neither Metcalf nor his new attorney, Stuckey, made a showing as to what the absent witnesses might say that would have warranted a continuance. Everything the trial judge had heard prior to the motion indicated that the witnesses could offer no insight into Metcalf's condition beyond Dr. Robertson's testimony. Although Metcalf did not raise the issue of ineffective assistance of counsel in his motion for new trial or make an objection in the record, we will still address his argument today because the real issue at hand is whether Metcalf received proper "hybrid representation."
While every accused has the constitutional right to be represented by an attorney, it must be balanced against the right of an accused to represent himself, that is, to present his own case pro se without an attorney. In Gray v. State, 351 So.2d 1342 (Miss. 1977), cert. denied Gray v. Mississippi, 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 847 (1980), this Court stated the following:
Mississippi Constitution Article 3, section 26 (1890) provides in part:
"In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, ... .
The refusal to permit defendant to argue his case is in direct violation of the above constitutional provisions and requires reversal."
Id. at 1345 (emphasis added); Accord, Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
In order to strike a balance between the right to counsel and the right to self-representation many courts have turned to "hybrid representation" as a middle ground. Hybrid representation is considered to encompass both the participation of the defendant in the conduct of his trial when he has not effectively waived the assistance of an attorney to defend him, and the participation by an attorney in the conduct of the trial when the defendant is defending pro se. Courts commonly refer to the role of the attorney in a situation in which a defendant has not effectively waived assistance of an attorney as that of "co-counsel." The role of the attorney in a situation where the defendant has effectively waived counsel and is proceeding pro se is that of "standby" or "advisory" counsel. The former tends to involve a more active role in the representation of the defendant than the latter.[2] In McKaskle v. Wiggins, *563 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), the Supreme Court considered the scope of a pro se defendant's Sixth Amendment prerogatives when the trial court, unsolicited by the defendant, appointed standby counsel. The Court noted that "the primary focus must be on whether the defendant had a fair chance to present his case in his own way." Id., 465 U.S. at 177, 104 S.Ct. at 950. It then set forth two general limitations on the extent of standby counsel's unsolicited participation at trial:
First, the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the Faretta right. If standby counsel's participation over the defendants' objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of the witnesses, or to speak instead of the defendant on any matter of importance, the Faretta right is eroded.
Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself. The defendant's appearance in the status of one conducting his own defense is important in a criminal trial, since the right to appear pro se exists to affirm the accused's individual dignity and autonomy ... From the jury's perspective, the message conveyed by the defense may depend as much on the messenger as on the message itself. From the defendant's own point of view, the right to appear pro se can lose much of its importance if only the lawyers in the courtroom know that the right is being exercised.
Id., 465 U.S. at 178-9, 104 S.Ct. at 951 (footnote omitted) cited in United States v. Mills, 895 F.2d 897, 902-3 (2d Cir.1990).
"It is well established that an accused has no absolute right to hybrid representation." Wiggins, 465 U.S. at 183, 104 S.Ct. at 953, 79 L.Ed.2d at 136. Nevertheless, a trial court may certainly permit hybrid representation in its discretion. Id.; United States v. LaChance, 817 F.2d 1491, 1498 (11th Cir.), cert. denied, 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987); United States v. Mills, 704 F.2d 1553, 1557 (11th Cir.1983) cert. denied, 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984); United States v. Hill, 526 F.2d 1019, 1025 (10th Cir.1975), cert. denied, 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182 (1976). Without employing the term "hybrid representation," this Court recognized the need for this type of representation in Matthews v. State, 394 So.2d 304 (Miss. 1981).
An accused could place the trial judge in a difficult situation by insisting on a pro se trial, and, upon conviction, claim that he/she did not have the benefit of counsel and did not knowingly waive counsel. Again if the court refused to permit an accused to represent himself/herself, and required him/her to have counsel present the case, the accused could contend that he/she was denied his/her constitutional right in not being permitted to present his/her defense pro se. In such delicate situations, the question of counsel waiver must be determined on the facts of each case.
Matthews at 311.
In Matthews, the appointed attorneys remained present during the four day trial and were ready, willing and able to assist, counsel and advise the appellants. In fact, Matthews did at times seek advice from her appointed attorney. This Court decided that the appointed attorney "was in the best position to know whether or not she executed a knowledgeable waiver of counsel and was mentally competent to do so ..." Id. Accord Curlee v. State, 437 So.2d 1, 2 (Miss. 1983). Furthermore, in Evans v. State, 273 So.2d 495 (Miss. 1973), we explained:
"[W]e have recognized a right of a defendant to proceed without counsel and to refuse the representation of assigned counsel ... [H]e may not use this right to play a `cat and mouse' game with the court, ... *564 or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of Counsel."
Id. at 499, citing United States v. McMann, 386 F.2d 611, 618-9 (2d Cir.1967), cert. denied, 390 U.S. 958, 88 S.Ct. 1049, 19 L.Ed.2d 1153 (1968).
Matthews, Curlee and Evans all involved representations in which the role of the attorney could be characterized as "standby" or "advisory" counsel. Trotter's representation of Metcalf, however, went well beyond that of simply advising Metcalf on procedural matters; it was more akin to a "co-counsel" role, a scenario which has not been addressed by this Court.
In the case sub judice, Metcalf attempted to invoke his right to self-representation during his February 15 arraignment when Trotter informed the court that Metcalf had expressed a desire to represent himself.[3] Metcalf indeed represented himself four days later when he motioned that the court order the production of previous psychiatric records. The trial judge acknowledged that Metcalf was representing himself in the order that was granted on February 19, 1990. Perhaps, the trial judge should have made a more explicit determination that Metcalf was competent to represent himself after his mental examination. However, the judge, through his order of February 19, 1990, did in fact state that Metcalf was representing himself. Further, the results of the Mississippi State Hospital which indicated that Metcalf was competent to stand trial and knew right from wrong only affirmed the determination that Metcalf was competent to represent himself. Lastly, Metcalf was on notice that he could represent himself as indicated in his own words, "[Trotter] came and asked me, said, `The judge wanted me to tell you that you could represent yourself."
At the bench conference, Metcalf again indicated that he was attempting to obtain other counsel and was aware at that time that he and Trotter were "working together" on the case. The trial judge reiterated to Metcalf that Trotter was available to advise him on anything. From this time until the trial on July 27, Metcalf did not deviate from the position that he did not want counsel alone to represent him. While the record from the arraignment and the bench conference are not explicit, it appears that the trial court contemplated providing Metcalf with hybrid representation. Metcalf insisted either on representing himself or working alongside counsel. It is apparent from the record that the trial judge, Trotter, and Metcalf all understood that Metcalf had obtained permission to act as co-counsel. This is evidenced by Metcalf's reference to his understanding that he and Trotter were "working together on things." Metcalf's desire to act as co-counsel is further demonstrated by the fact that he appeared at trial with Trotter and at no time expressed a desire to dismiss him. Further, Trotter stated on the record that the defendant never refused his advice. In sum, Metcalf neither moved to dismiss his attorney nor refused his advice. Judging from Metcalf's actions, he understood that Trotter was working with him on his case.
Metcalf argues that the trial court failed to conduct a proper waiver of counsel inquiry before permitting him to represent himself at trial. Metcalf's argument is misguided, however, as he did not truly represent himself. He requested and was provided with the assistance of counsel throughout the entire trial process in the form of a "hybrid representation."[4] Before trial, he requested that he be allowed to participate in varying degrees in his own defense. The question before this Court is whether granting a request for a participatory role amounts to granting pro se representation. To answer this question, we must look at the facts and circumstances surrounding the trial *565 court's response to such a request. If the totality of the circumstances indicates that the defendant was granted the right to retain the assistance of counsel while assuming a participatory role in his own defense, we may term the right granted as one of "self-representation," even though the exact assistance given may still be one of "hybrid representation."
There are several factors we consider in deciding whether the trial court granted pro se or hybrid representation. These factors include: the defendant's accessibility to counsel; whether and how often he consults with counsel up to the point of the request; the stage of trial at which he requests a participatory role in his defense; the magnitude of the role he desires to assume; whether the trial court encourages immediate and constant accessibility of counsel; and the nature and extent of assistance of counsel which has been provided up to the point of the request, including both substantive and procedural aid.
The trial court clearly granted Metcalf a participatory role at trial with attorney representation. The judge recognized that Metcalf never discharged his counsel. Trotter remained at counsel table with Metcalf and encouraged Metcalf to consult with him throughout his trial. Metcalf was never without the advice and knowledge of counsel, although he remained free to accept or reject that assistance.
Metcalf's own role was very limited. He presented the opening and closing statements, made one objection, and asked one question on cross-examination of each of the State's witnesses.[5] Trotter, on the other hand, objected to and argued against the introduction of evidence when a proper predicate had not been laid; attended all bench conferences; objected to cumulative evidence; moved for a directed verdict and to exclude certain evidence; directed Metcalf's testimony, eliciting his defense of mental incapacity; made several objections and arguments to rebuttal testimony by expert witnesses; stipulated to the qualifications of the experts; cross-examined the expert witness; objected to hearsay testimony on rebuttal; objected to and argued for certain jury instructions; and prepared the outline from which Metcalf gave his closing argument and advised him on voir dire and the opening statement. It is clear that Trotter's role was not merely that of a skilled bystander, but of a substantive litigator. The record is replete with references to consultations between Metcalf and Trotter as well as numerous instances where Trotter helped to clarify the thrust of Metcalf's argument for the trial court and the jury. Metcalf was never without the assistance of counsel throughout his trial since Trotter served as a continuous and accessible source of legal advice. Under the circumstances, Trotter did a commendable job in helping with Metcalf's representation.
In many ways, Metcalf enjoyed the best of both worlds throughout his trial  he was permitted to represent himself while retaining the assistance of counsel. He was provided with more rights than those afforded under either the United States or Mississippi Constitutions. The trial court, in its discretion, could have required Metcalf to choose between the right to counsel and the right to pro se representation, but in striving to balance both interests, it granted a "hybrid representation." Metcalf cannot now complain because he received exactly what he requested  assistance of counsel while conducting his own defense.
Trial judges walk a thin line when attempting to maintain a balance between the defendant's right to counsel and his right to self-representation. An infringement on either right means automatic reversal:
A trial court's evaluation of an individual's desire to represent himself is fraught with the possibility of error. Because self-representation necessarily entails the waiver of the sixth amendment right to counsel, a trial court can commit reversible constitutional error by improperly granting a request to proceed pro se  and thereby depriving the individual of his right to counsel *566  or by denying a proper assertion of the right to represent oneself, and thereby violating Faretta [the right to self-representation]. See United States v. Fant, 890 F.2d 408, 409-10 (11th Cir. 1989); Brown v. Wainright, 665 F.2d 607, 610 (Former 5th Cir.1982) (en banc); Chapman v. United States, 553 F.2d 886, 892 (5th Cir.1977).
Cross v. United States, 893 F.2d 1287, 1290 (11th Cir.1990). Had the trial judge in this case forced Trotter to remain as Metcalf's court-appointed counsel, this case would very likely be in front of us today on the assertion that the trial judge failed to honor Metcalf's right to self-representation. See Scarbrough v. State, 777 S.W.2d 83 (Tex.Cr.App. 1989).
The trial court's decision to allow pro se representation will be disturbed only upon a showing of abuse of discretion. Curlee, 437 So.2d at 2. To that effect, we have stated:
Appellate courts regularly admonish themselves to give substantial deference to findings of fact made by the trier of fact... . As a matter of common sense as well as common law, the fact finder surely must have the benefit of viewing the manner and demeanor of the witnesses... . The trial court necessarily has an infinitely superior vantage point when compared with that of this Court, which has only a cold record to read.
* * * * * *
... Not only did he [the trial judge] have the benefit of their words, he alone among the judiciary observed their manner and demeanor. He was there on the scene. He smelled the smoke of battle. He sensed the interpersonal dynamics between the lawyers and the witnesses and himself. These are indispensable.
Allowing the trial judge's findings of fact a substantial measure of finality or presumptive validity is the least imperfect way we have of peaceably settling disputes such as this. Were we to substitute our view of the facts for the chancellor's, one thing could be said with certainty: the chances of error in any findings we might make would be infinitely greater than is the case where those findings are made by the man on the scene. The one time in a hundred when we may be right and the trier of fact wrong cannot justify our disturbing the established practice regarding our scope of review.
Culbreath v. Johnson, 427 So.2d 705, 708 (Miss. 1983).
This matter could have been clarified had the trial judge made a clearer record of the events which transpired; however, since these issues were not raised by the defense on the motion for new trial or j.n.o.v., he did not have the opportunity to do so. Unfortunately, "[a]ll of us have 20/20 vision in hindsight. It's a pity that our vision is not also perfect in foresight." Sanders v. State, 260 So.2d 466, 471 (Miss. 1972). Nevertheless, Metcalf received even more than the representation he requested. Trotter conducted a large part of Metcalf's defense and took an active role in his representation. Regardless of how we label the representation he received, Metcalf was never without the advice and expertise of his attorney and as such there was no need for a waiver instruction. His argument is specious and should be dismissed.

II.
Metcalf further complains that even if he is found to have had assistance of counsel, that assistance was ineffective. This Court employs the two-part test articulated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to determine whether a defendant has been denied effective assistance of counsel. Fisher v. State, 532 So.2d 992 (Miss. 1988). Strickland requires the defendant to show first "that counsel's performance was deficient" and second that "the deficient performance prejudiced the defense." Strickland at 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. To meet the requisite showing of prejudice, the defendant must show that "there is a reasonable probability that but for counsel's unprofessional errors the result would have been different." Fisher, 532 So.2d at 997, citing Strickland at 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
In this case, Metcalf had every opportunity to avail himself of Trotter's skills and services. Looking at the first prong of the Strickland *567 test, we note that Metcalf's only complaint about Trotter's performance was that the attorney did not subpoena the expert witnesses he had sought. Metcalf was controlling his own defense, and Trotter can not be faulted for not subpoenaing the witnesses earlier since Metcalf never gave him the names of the witnesses until the day before the trial. Working on short notice, Trotter advised the clerk's office to issue subpoenas. Since all of the witnesses were either residents of another county or on vacation, none could be reached. Metcalf claims to have needed these witnesses to support his insanity plea which he had not raised and, ironically, was contradicted by his own testimony on cross-examination in admitting his sanity. The trial court had notice only of Metcalf's contention that he was incompetent to stand trial. He complained at trial that his witnesses were not subpoenaed, but made no showing that they were vital to his defense. No insanity defense notice was given to the prosecution, and no proffer was made of the doctors' testimony. There is no indication that any of the testimony would have been relevant to the defense.
When testimony is not allowed at trial, a record of the proffered testimony must be made in order to preserve the point for appeal. Johnson v. State, 416 So.2d 679, 681 (Miss. 1982); Gates v. State, 484 So.2d 1002, 1008 (Miss. 1986). Metcalf made no formal proffer of testimony. Applying the second prong of Strickland, there were no affidavits or other evidence introduced at trial which would allow us to even begin to determine whether Metcalf was prejudiced by the failure to timely subpoena the witnesses. Furthermore, Metcalf testified on direct examination regarding the alleged "black-outs" of memory and his assertion that he had been in and out of institutions for the better part of his life. This testimony was rebutted by Dr. Robertson, who indicated that she and the other doctors at the Mississippi State Hospital thought that he was feigning blackouts. She further testified that many of the institutions where Metcalf claimed to have been treated had no records of his admission or treatment. Thus, Metcalf got the evidence into the record and before the jury, albeit not in the manner he desired.
Metcalf got the representation he requested and should not now complain about the results. He sought a participatory role in his defense which he was granted in the form of hybrid representation. Because he never discharged his attorney and was never without his advice and expertise, even though he was free to accept or reject that advice, a waiver of counsel inquiry was not required. Further, the record reflects that Trotter was not deficient in representing Metcalf nor was Metcalf's case prejudiced by counsel's representation. Finally, we cannot review the trial court's denial of the continuance because Metcalf did not move for a new trial on this ground. One should not ask for something one does not want, for one may get it.
For the reasons stated, Metcalf's conviction for uttering forgery and sentence of fifteen (15) years in custody of the Mississippi Department of Corrections is affirmed.
CONVICTION FOR UTTERING FORGERY AND SENTENCE OF FIFTEEN (15) YEARS IN CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
PRATHER, P.J., JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in results only.
BANKS, J., dissents with separate written opinion joined by HAWKINS, C.J., and SULLIVAN, J.
PITTMAN, J., not participating.
BANKS, Justice, dissenting:
The majority alludes to a procedural bar, abandons it, and then suggests that the trial court properly resolved what it views as the tension between a litigant's right to represent himself and his right to effective assistance of counsel. Poppycock. How the majority can suggest that Metcalf "never truly represented himself," Majority opinion, ante p. 564, and yet countenance his court-appointed counsel's utter failure to lift a finger at pretrial preparation or much else until well into the trial is a mystery to this writer. Metcalf never relinquished his right to be *568 fully represented by counsel and, even if he had, the trial judge clearly failed his responsibility to assure that any such waiver was knowingly and intelligently made or even to acknowledge before trial that it had been made. I believe that the issue before the court, whether the trial court erroneously deprived Metcalf of adequate representation is fully preserved as a matter of record and that proper resolution of that issue compels reversal. I therefore dissent.

I
Dr. Walter Roberts practices veterinary medicine in Belzoni. At the request of several ministers in the community, he had provided James Metcalf a place to live and a job cleaning up around the clinic. On August 5, 1989, Metcalf allegedly forged Roberts' name on three checks stolen from the clinic and proceeded to cash them at various area businesses. One of the business owners, who suspected that the signature was a forgery, reported it to the police and Metcalf was arrested. He was indicted by the Humphreys County Grand Jury for uttering forgery.
The record reflects that a Mr. Trotter was appointed by the court to act as defense counsel for the defendant. At the arraignment, on February 15, 1990, Metcalf appeared before Judge Evans with his appointed counsel. Trotter indicated that Metcalf had told him previously that the defendant was attempting to locate different counsel and, that if he could not retain different counsel, he may wish to represent himself. At that time, Metcalf also informed the court that he was under psychiatric care and medication.
BY MR. METCALF: I was telling him that I at this time can't enter a plea because I'm under psychiatric care and I don't know. I've, you know, been prescribed medication, I'm being treated by a therapist, a psychiatrist.
* * * * * *
(Judge asks a few routine questions about defendant's receipt of copy of the indictment.)
BY MR. TROTTER: If the Court please, Mr. Metcalf has indicated to me that he is in the process of retaining counsel.
BY THE COURT: When he's done so, we'll relieve you.

BY MR. TROTTER: All right, thank you.
BY MR. METCALF: Well is the Court aware ... aware that I'm under psychiatric care?
BY THE COURT: You just told me, yes, sir.
* * * * * *
BY MR. TROTTER: If the Court please, if I could go back on the record? Mr. Metcalf indicated he would .. . he's attempting to hire counsel, but if he's unable to hire counsel that he wishes to represent himself and... .
BY THE COURT: We'll cross that bridge if we have to.

BY MR. TROTTER: All right, sir. I would just like for the record to reflect that... .
BY THE COURT: Yes, sir.
BY MR. TROTTER: ... at this time.
BY THE COURT: The Court will not relieve you at this time.

BY MR. TROTTER: Oh, I understand, yes sir.
At a bench conference on February 19, 1990, the defendant appeared before Judge Evans with Trotter and requested the court to have certain expert witnesses subpoenaed to testify with respect to his mental deficiency, along with any medical records of the witnesses. The court in the presence of the defendant, directed Trotter to subpoena those witnesses and records. The court, on defendant's oral motion for mental examination joined in by Trotter, entered an order for mental examination at the Region VI Mental Health Center under the direction of Dr. McKinley for the purpose of determining if the defendant was competent to stand trial and to determine if defendant would be able to represent himself.
BY MR. TROTTER: We've got another plea. And then you remember the guy, Mr. Metcalf, who wants to be his own *569 lawyer and you advised me to be available to advise him at the time?
BY THE COURT: Uh-hmmmm.
BY MR. TROTTER: Anyway, he's got something he wants to say to you, so I... .
BY THE COURT: Ask him to step up.
(MR. METCALF APPROACHED THE BENCH)
BY THE COURT: (Interrogating the defendant) Yes, sir, now you are ... your name is ...
BY MR. METCALF: James Metcalf.
BY THE COURT: James Metcalf. You had something you wanted to say to me?
DEFENDANT: Right. First of all, I want to ask are you... are you taking motions, pretrial motions today?
BY THE COURT: Well, what is your motion?
DEFENDANT: Well one thing, I wanted to request or move the Court for the appearance of an expert witness to testify in regard to mental deficiency and examination and also subpoena the records he have (sic).
BY THE COURT: All right, who is this?
DEFENDANT: His name is Kevin F-e-i-s-e-l, last name.
BY THE COURT: Where does he live?
DEFENDANT: He's with the Region VI Mental Health Care in Belzoni.
BY THE COURT: In Greenwood?
DEFENDANT: Well I been (sic) going here.
BY THE COURT: Here?
DEFENDANT: In Belzoni, but they are ... they are from Greenwood.
BY THE COURT: All right, sir, on request he will be subpoenaed.
DEFENDANT: Okay.
BY THE COURT: And his records. That'll be a subpoena.

BY THE COURT: Mr. Trotter, will you tend to that, please, sir?

BY MR. TROTTER: Yes, sir.

BY THE COURT: Have him subpoenaed. Give him the name and he'll be subpoenaed for the trial.

BY MR. METCALF: All right, sir. And also Dr. McKinley, who I ... On 11/3 of '89 the records indicate that I was given psycho-chemical therapy because I been (sic) getting psycho therapy from Mr. Kevin.
BY THE COURT: You have seen both of these doctors?
BY MR. METCALF: Dr.  The McKinley, they took me there  the records indicate that I was given chemical therapy, but I don't know ... I don't know whether ... but I got the papers there to show it.
BY THE COURT: All right.
BY MR. TROTTER: If the Court please, this man's case is set for trial on Wednesday and I don't know whether his request is in the matter of a motion for mental examination.
BY THE COURT: Well I was just thinking about that, Mr. Trotter, and I'm going to... .
BY MR. TROTTER: Mr. Metcalf... .
BY THE COURT: ... enter an Order having him examined by the Mental ... by Region VI since they have his records and have seen him before and report made to this Court on whether they feel in their opinion he is mentally competent to stand trial and assist an attorney in the defense of the charges against him, if you'll prepare that Order.
BY MR. TROTTER: Wednesday. Day after tomorrow.
BY THE COURT: If this can be done by then; if not, on defendant's motion he will be set at a later date and give the Mental Health time to give me a report.
BY MR. TROTTER: Mr. Metcalf, you understand if they can't have this report by Wednesday, of course, you're in jail and you may not even get to trial again until July? Do you understand this if they can't get this report?
BY MR. METCALF: Well, I need that report.
BY MR. TROTTER: So, if I ... if it puts you off to July, you realize you're not ... you'll still be in Humphreys County Jail pending your case coming up.

*570 BY MR. METCALF: Well, if that's ... I mean we need a report of it.
BY THE COURT: All right.
* * * * * *
(Discussion about discovery)
BY THE COURT: Well now you had indicated last week you wished to get another lawyer to represent you. Have you done that?
BY MR. METCALF: I still ... I made ... I sent a notice to that lawyer today, today by one the Deputy's secretary. She said that she would give it to her. She supposed to be back today so I don't know, I'm still trying to make contact with her.

BY THE COURT: All right. If you don't, the Court has appointed Mr. Trotter here to represent you, and . ..
BY MR. METCALF: All right, Now we're working together now?

BY MR. TROTTER: I'll be available to advise. ....
BY THE COURT: Yes, sir.

BY MR. TROTTER: ... Mr. Metcalf on anything. . ..
BY THE COURT: Yes, sir. And Mr... . Let's stop and think about this. I want a statement from the psychiatrist about whether Mr. Metcalf is competent to represent himself? He had indicated he might want to do this. Of course ... I don't know what the answer to that question is,. I don't know how we proceed on that. You might think about that and let's talk about that.
BY MR. TROTTER: Well, we could ask Dr... . . I believe Dr. McKinley is the doctor in charge at Region VI Mental Health. What's his full name?
BY MRS. BOUCHARD: He's the psychiatrist. I can't think of it.
BY THE COURT: All right. Give me an answer to that question also.
The report from Region VI Mental Health does not appear among the court papers and appears to have never been made. Subsequently, on March 26, 1990, the trial court entered another order for psychiatric examination at the Mississippi State Hospital at Whitfield for the purposes of thoroughly examining and determining the defendant's mental condition and determining the possible treatment of any ascertained illness. This order, which was signed by a different judge, requested no advice on the question of the Metcalf's ability to represent himself.
On June 10, 1990, Dr. Maggie Lancaster, director of Forensic Service at the Mississippi State Hospital at Whitfield, advised the trial court of her findings after a psychiatric examination of the defendant. Dr. Lancaster's opinions were based on information concerning crimes that the defendant was charged with, his history of arrest and his psychiatric records from Missouri and from the Mental Health Center in Greenwood. Dr. Lancaster's conclusions were that the defendant was competent to stand trial, knew the difference between right and wrong in relation to his actions at the time of the crime charged and was capable of conferring with an attorney. She does not comment on his ability to defend himself except to say that in her opinion he has a rational understanding of the case against him.
The case proceeded to trial on July 27, 1990, Judge Evans was again presiding. The defendant ended up defending himself, the conversation in which the trial court decided that he would be pro se follows:
BY THE COURT: You are James C. Metcalf?
BY MR. METCALF: Yes, sir.
BY THE COURT: Mr. Metcalf, you of course, know you are set for trial today in cause No. 4414 wherein the grand jury has charged you with the crime of uttering forgery, and at several hearings that you had with me, you have stoutly maintained that you want to represent yourself; is that correct?
BY MR. METCALF: Can I ask a question?
BY THE COURT: Yes, sir.
BY MR. METCALF: I wanted to represent myself if ...
BY THE COURT: Beg your pardon?
BY ME. METCALF: I say I wanted to represent myself if we should have due process of the court. Like you issued an order of February the 19th that I could *571 have the expert witnesses that had been examined for to come in and testify. That's the only reason because I know what I've been through but I don't know how to explain so I wanted the expert witnesses to come, but the process of the court had been tampered with.
BY THE COURT: All right, what process of what court has been tampered with.
BY MR. METCALF: You're the judge that issued the order on February the 19th to Keven Fifer and Dr. McKinley would appear as expert witnesses. Are you that judge that issued that order?
BY THE COURT: No, sir. There's been no such order issued.
BY MR. METCALF: I had asked for that and you had allowed that on February 19th.
BY THE COURT: I ordered you examined by Mental Health, I believe.
BY MR. METCALF: Yeah, Region VI Mental Health. You had said that I could call those people as expert witnesses.
BY THE COURT: Well, you had every opportunity to call those people as expert witnesses.
BY MR. METCALF: Well, I had an appointment since April the 26th. They was going to have another examination so we could prepare for the trial. It was cancelled by the sheriff. I had an appointment with Kevin Fifer, who was preparing me to meet with Dr. McKinley on April the 26th, so that they could prepare the records and have an examination of me  prepare an examination so they could appear, but it had been cancelled by the sheriff department. I didn't know at that time that it had been cancelled.
BY THE SHERIFF: The only thing that the sheriff's department cancelled on you, you had two mental evaluations. You went to Whitfield for mental evaluation and treatment and we had two orders at the same time.
BY THE COURT: All right, sir, I understand. And the Court did not require you to be examined. It said at one of them. The Court did not have you examined at both of them. And the Mississippi State (Hospital) found you competent to stand trial.
BY MR. METCALF: I can't represent myself because I was calling expert witnesses to come and testify and everything. The sheriff department cancelled my examination. When I tried to get  I went up another appointment was supposed to been for the 12th of this month, they again cancelled me, said I couldn't go. I can't represent myself. The only reason I was representing myself was because I was calling other people to testify.
BY THE COURT: Well, you see, Mr. Metcalf, that's the need  reason you needed some expert advice. You needed some advice from an attorney to handle that for you and you refuse.
BY MR. METCALF: No, he was working along with me.
BY THE COURT: No. He  you refused that before me very emphatically on two or three occasions, and the court suggested that to you that you needed it and that I was going to have him available at any time you wanted to call him. And I've got him coming over here today and I'll have him sitting there with you. But now you have come up here the morning of trial  he's been  he has not done any preparation. He hasn't interviewed any witnesses. You haven't told him of the witnesses you wanted.
BY MR. METCALF: Yes, I have.
BY THE COURT: When? Yesterday?
BY MR. METCALF: No we just came yesterday,. I've seen him several times and told him I wanted these witnesses but he just came yesterday and made out the subpoena.
BY THE COURT: Where is Mr. Trotter?
(Judge confers with bailiff on Trotter's whereabouts)
BY THE COURT: Well, this whole mess is your fault. It's not mine. It's not Mr. Trotter's because he was available to you and would have prepared himself and prepared you for this trial if you had just indicated that you wanted him, and you told me you didn't want him and wasn't going to consult with him and all that, and *572 I suggested to you on I know two occasions that this was not wise.
BY MR. METCALF: Judge, I think you got me mistaken.
BY THE COURT: No, I haven't got you mistaken.
BY MR. METCALF: I've only been before you one time.
BY THE COURT: Well 
BY MR. METCALF: That was February 18th.
BY THE COURT: All right, Well, February  let's just assume it was one time.
BY MR. METCALF: Yes, sir.
BY THE COURT: But you remember me cautioning you and telling you that you needed a lawyer.
BY MR. METCALF: No, I remember you asking me  attorney Trotter did I have a desire to represent myself  to hire an attorney. I said I had tried to get an attorney.
BY THE COURT: And you told me you didn't want Mr. Trotter.
BY MR. METCALF: Well, I said that if necessary I would represent myself. Those are my words.
BY THE COURT: All right. All right. Anyway 
BY MR. METCALF: But I never have refused his assistance and I've always asked him to help me prepare for the trial, and he can tell you the same thing.
(The two go on to discuss Mr. Metcalf's attempts to contact his witnesses and allegations that the sheriff's department made it difficult for Metcalf to communicate with the world).
BY MR. METCALF: I been trying to get these witnesses ever since this thing started.
BY THE COURT: That's all. And your refusing to accept any legal advice has got you in the predicament you're in this morning, and I'm going to put you to trial.
The defendant, pro se, moved the court for a continuance when he learned that his witnesses' subpoenas had been returned "not found" and advised the court that the witnesses he had subpoenaed were all doctors and that their testimony concerning his mental condition was necessary. The trial court overruled the defendant's motion for a continuance and the case was tried with the defendant representing himself.
Metcalf continued to press his inability to represent himself and the absence of his mental capacity witnesses through voir dire. The only cross examination of the first four witnesses was by Metcalf. Following a recess, Trotter made his first utterance in the defense of the case, when he interposed and objection to an item of evidence during a bench conference. He interposed the same objection with subsequent witnesses and made a perfunctory motion to dismiss at the close of the state's case. Thereafter, Trotter examined Metcalf concerning his mental problems, making it clear that the examination was at Metcalf's request and that the questions asked were those directed by Metcalf. The state cross-examined Metcalf and put on rebuttal witnesses. Trotter, again explaining that he was acting at Metcalf's request, cross-examined Dr. Robertson, a clinical psychologist with the Mississippi State Hospital. Trotter also handled objections to jury instructions and presented instruction on Metcalf's behalf. Metcalf did his own closing argument.
The jury returned a verdict of guilty and on July 27, 1990, the trial court sentenced Metcalf to a term of fifteen years. The court later appointed W.S. Stuckey, Jr., of Greenwood, to represent Metcalf on his appeal. The defendant's motion for jnov or, in the alternative a new trial, was overruled on September 4, 1990, and this appeal was duly perfected. Metcalf raises two related issues:
I. Did the defendant intelligently and understandably waive right to counsel? Did the trial judge make an appropriate record to show that defendant did so waive?
II. Did defendant receive effective assistance of counsel?

II
The first strawman raised by the majority is that Metcalf has not preserved the issue and alludes to the fact that error in failure to *573 grant a continuance is one which must be preserved by assertion in a motion for new trial. One need only read the issues raised set forth above to note that the failure to grant a continuance is not among them. While Metcalf may have continually complained at trial about the absence of his witnesses and while he may have sought a continuance for that purpose, the record virtually screams that his court-appointed lawyer never adequately performed with regard to the witnesses or anything else. The fact that the absence of witnesses is the only thing that an uncounseled Metcalf knew to complain about as a deficiency of counsel's performance should not restrict our inquiry. Clearly Metcalf disputed any contention that he had rejected the assistance of counsel and there is no record support for a finding that he had done so. Just as clearly, Trotter did not prepare for trial or attempt to prepare any defense whatever. He thought that he had been relieved of the obligation to do so. The judge apparently formed that opinion as well. Unfortunately, not a word in the record suggests that this is in fact true, or that if it is true that that fact was made known to Metcalf, or, finally, if it is true, that the court made the proper inquiry and determination as to Metcalf's ability to have so relieved Trotter of responsibility.
Back to the straw man, it is understandable that the majority seeks to recast the issue here as one of continuance because it is clear that where error is clear on the record it need not be preserved by assertion in a motion for new trial. Colson v. Sims, 220 So.2d 345, 346 fn. 1. (Miss. 1969); Jackson v. State, 423 So.2d 129 (Miss. 1982). It is appropriate then that the procedural bar alluded to by the majority is quickly abandoned. Majority opinion ante p. 562.

III
The majority next leaps to a discussion of "hybrid representation". The problem here is that the majority cannot find record support for one of its premises, that Metcalf insisted on representing himself to the extent of controlling the litigation or to the exclusion of Trotter or other counsel. Indeed he denies this explicitly and that denial is never contradicted. Another problem is that, even if we assume that Trotter was effectively reduced to responding to Metcalf's request's, the one thing that it is clear that Metcalf wanted counsel to do for him pre-trial was not done despite the trial court's on-the-record assurances that it would be done. The majority's second premise, that Metcalf merely expressed a desire to participate as co-counsel is supported by the record but that premise does not square with the fact that Trotter did nothing to prepare for trial with or without Metcalf's advise and made it clear that he acted only upon Metcalf's request during trial. Moreover, the majority has not cited a single case where one has been designated as "standby" counsel only without an express determination regarding the defendant's ability to represent himself and an order allowing him to do so and relieving counsel of other than clearly delineated "standby" responsibility.
Here, James Metcalf appeared before the Humphreys County Circuit Court a total of three times. He first appeared for his arraignment on February 15, 1990. Subsequently, he appeared for a bench conference on February 19, 1990, and did not again appear until his July 27, 1990 trial. All the relevant exchanges on those occasions are fully set forth above and they provide sufficient rebuttal to the fanciful suppositions made by the majority. A perusal of the record shows no point where it can be said that Metcalf waived his right to counsel. Additionally, the record discloses no point where Trotter was relieved of his duty of full representation.
The record reveals that the trial court itself never perceived Defendant to be without the aid of counsel until the very day of trial. When the court was told by Mr. Trotter during arraignment that Defendant wished to retain other counsel or defend himself if need be, the court responded that that bridge would not crossed until it was gotten to, if ever. The court told Mr. Trotter that he would be relieved if and when Defendant retained other counsel, clearly indicating that, in the meantime, Mr. Trotter was to continue as counsel for Metcalf in preparation for trial.
*574 The only other time prior to trial that Defendant appeared before the court was at a bench conference. There, the court asked Defendant if he had succeeded in retaining other counsel. Defendant responded that he had been unable to contact his desired counsel. The court then indicated to him that Mr. Trotter had been appointed to represent him and would continue in that capacity. Then, with the court's affirmation, Defendant responded, "All right, now [Mr. Trotter and I are] working together," and Mr. Trotter responded that he would be available to counsel Defendant. Further, after Defendant indicated that he wanted certain named doctors to appear for him as expert witnesses to testify regarding an alleged mental deficiency on his part, the court specifically told Mr. Trotter to take care of the appropriate subpoenas for Defendant. Clearly, there was no waiver here. Quite to contrary, Defendant was reassured that he would have the aid of Mr. Trotter in preparing for trial. It is also obvious that, as of this point, Mr. Trotter was not released from his duties as appointed counsel. He still bore general responsibility for the defense; and he was specifically entrusted with the task of subpoenaing medical experts for Metcalf.
Defendant did not appear before the court again until his trial on July 27, 1990. That was the first occasion where the Court charged Metcalf with having waived his right to counsel. It should suffice to say that Metcalf's recollections as to prior proceedings prove more consistent with the transcript of those proceedings than those of the court and Trotter.
Presented above is virtually every in-court, pretrial syllable uttered by Defendant. It is clear that one cannot identify a knowing and intelligent waiver of counsel by Defendant in this transcript. Nothing in this record discloses an admonition to Metcalf concerning the dangers of proceeding without counsel. There is no on the record determination that counsel was knowingly and intelligently waived. Nor was Mr. Trotter ever relieved of his obligations as court appointed counsel or delineated any reduced responsibilities.
It is basic to this nation's constitutional jurisprudence that every accused has a fundamental right to counsel. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Johnson v. Zerbst, 304 U.S. 458, 462, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461, 1465 (1938); Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 63, 77 L.Ed. 158, 162 (1932). That fundamental right can only be considered waived where the record shows unequivocally that the accused indicated to the trial court that he wished to proceed to trial without counsel, despite full knowledge of all the disadvantages and consequences of doing so. Carnley v. Cochran, 369 U.S. 506, 514, 82 S.Ct. 884, 889, 8 L.Ed.2d 70, 76-77 (1962); and Faretta v. California, 422 U.S. 806, 836, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581-82 (1975). The record in this case falls far short of documenting such an intention by Defendant James Metcalf.
In Carnley v. Cochran, the United States Supreme Court held:
Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.
369 U.S. at 516, 82 S.Ct. at 890, 8 L.Ed.2d at 77. Moreover, in Boyd v. Dutton, 405 U.S. 1, 3, 92 S.Ct. 759, 760, 30 L.Ed.2d 755, 759 (1972), the Supreme Court proclaimed, "Waiver will not be `lightly presumed,' and a trial judge must `indulge every reasonable presumption against waiver.'" (quoting Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.2d 1461). Additionally, the Supreme Court noted in Faretta v. California, 422 U.S. 806, 836, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581-82 (1975), "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to chose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with open eyes."
Those sentiments have been echoed by this Court. E.g., Richardson v. State, 402 So.2d 848 (1981); Conn v. State, 251 Miss. 488, 170 So.2d 20 (1964); Clarke v. State, 251 Miss. *575 627, 628, 170 So.2d 575, 576 (1965). In Conn, we held:
[T]here must be an intelligent and competent waiver of counsel by the defendant and ... the trial court should so determine, and, further ... such determination, as well as the facts on which it is based, should appear in the record.
251 Miss. at 494, 170 So.2d at 23 (quoted in Clarke v. State, 251 Miss. 627, 628, 170 So.2d 575, 576 (1965). In Richardson v. State, we noted that "A waiver of [the right to counsel] may occur at any time, before or during the trial, but it must be made with a full understanding of its disadvantages and consequences." 402 So.2d 848, 850 (citing Faretta, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562; Boyd, 405 U.S. 1, 92 S.Ct. 759, 30 L.Ed.2d 755; and Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461).
If we are to uphold Defendant's conviction against a challenge that he was denied his right to effective assistance of counsel, there must be facts existing in the record which we, as a reviewing court, may objectively point to as evidence that Defendant manifested an intent to proceed to trial without the aid of counsel. Carnley v. Cochran, 369 U.S. 506, 514, 82 S.Ct. 884, 889, 8 L.Ed.2d 70, 77; Conn v. State, 251 Miss. 488, 494, 170 So.2d 20, 23; Clarke v. State, 251 Miss. 627, 628, 170 So.2d 575, 576. Furthermore, such facts must exist alongside other showings that Defendant was apprised of the dangers of proceeding to trial by himself and chose to proceed pro se in the face of such knowledge. Faretta v. California, 422 U.S. 806, 836, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581-82; Richardson v. State, 402 So.2d 848, 850. Without question, these requirements make it difficult, except in the clearest of cases, to arrive at a determination that Defendant did in fact waive his right to counsel. That is exactly the aim of our constitutional jurisprudence, however; and we cannot blunt these norms for any reason, not even a desire to push recalcitrant and manipulative criminal defendants through the system. There are some things we hold so very basic to the fabric of our American system of laws that we label them "fundamental rights;" and with respect to those rights, we are required by our Constitution to "indulge every reasonable presumption against waiver" and "not presume acquiescence in [their] loss." Johnson v. Zerbst, 304 U.S. at 464, 58 S.Ct. at 1025, 82 L.Ed. at 1466 (emphasis added).
What makes this action especially egregious is that Metcalf questioned his own mental capacity. While his examination at the State hospital would indicate that he was faking there is room for a difference of opinion in this area and the testimony of his alleged treating physicians would certainly be important. This fact alone should dictate special care in determining the question whether a supposed waiver is knowingly and intelligently made.
Finally, it is clear that Mr. Trotter was never formerly relieved as court-appointed counsel. We have suspended lawyers for failing to adequately perform their obligations to their clients before they are relieved from a responsibility to do so by the court. Myers v. Miss. State Bar, 480 So.2d 1080, 1091-92 (Miss. 1986) cert. denied 479 U.S. 813, 107 S.Ct. 64, 93 L.Ed.2d 23 (1986). This is so even if the client agrees. Id. 1092. There we said:
The courts of this state are dedicated to the fair and equal administration of justice and act in accordance with that high principle. It is incumbent upon the members of the bar of this state whose appearance before a court of record for a client assures that court that that client's rights are being protected by a duly licensed member of the bar of this state that when those rights are no longer to be protected by that particular member of the bar he has an immediate duty to notify both the court and the client so that the court may, if necessary, take steps to see that valuable rights are not thereby lost.
Id. at 1092-93.
This is not a case where counsel is accused of specific transgressions or negligence. This is a case where counsel acknowledged that he in fact did not act as counsel. It is clear from this record that Trotter took the position that he was to do no more than respond to Metcalf's specific requests for assistance. There is no indication that he undertook the responsibility to explore Metcalf's *576 claim of a mental illness defense with Metcalf's alleged expert witnesses or any other defense. We make no intimation here that discipline is appropriate, because it appears that his assumed posture of "standby" counsel had the tacit or off-the-record approval of the court. Surely, however, we cannot affirm a conviction where it appears that lawyer, even innocently, has stood idly by in the face of an impending trial, and where the client has never been formally, or even informally, advised that counsel has been relieved of his obligation of full representation.
For the foregoing reasons, in my view, the judgment of the circuit court should be reversed and this matter remanded to that court for further proceedings.
HAWKINS, C.J., and SULLIVAN, J., join this dissent.
NOTES
[1] Rule 59 deals with motions for new trial:

(a) Grounds. A new trial must be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of Mississippi; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted on suits in equity in the courts of Mississippi.
On a motion for a new trial in an action without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law make new findings and conclusions, and direct the entry of a new judgment.
[2] The following cases involve various types of hybrid representations which have been granted in federal and state courts. Different states have differing requirements for the assorted types of hybrid representation. Some require valid waiver for some types of representation and not for others; it differs from state to state, circuit to circuit. Reese v. Nix, 942 F.2d 1276 (8th Cir.1991); United States v. Taylor, 933 F.2d 307 (5th Cir.1991); United States v. Treff, 924 F.2d 975 (10th Cir.1991); United States v. Mills, 895 F.2d 897 (2nd Cir.1990); Cross v. United States, 893 F.2d 1287 (11th Cir.1990); Tuitt v. Fair, 822 F.2d 166 (1st Cir.1987); Johnstone v. Kelly, 808 F.2d 214 (2nd Cir.1986); United States v. Torres, 793 F.2d 436 (1st Cir.1986); Hodge v. Henderson, 761 F. Supp. 993 (S.D.N.Y. 1990); United States v. Durden, 673 F. Supp. 308 (N.D.Ind. 1987); Briscoe v. State, 606 A.2d 103 (Del. 1992); Monts v. Lessenberry, 305 Ark. 202, 806 S.W.2d 379 (1991); In re Chapman, 155 Vt. 163, 581 A.2d 1041 (1990); People v. Bloom, 48 Cal.3d 1194, 259 Cal. Rptr. 669, 774 P.2d 698 (1989); Carter v. State, 512 N.E.2d 158 (Ind. 1987); State v. Lehman, 137 Wis.2d 65, 403 N.W.2d 438 (1987); State v. Franklin, 714 S.W.2d 252 (Tenn. 1986); Reed v. State, 491 N.E.2d 182 (Ind. 1986); State v. Cooley, 468 N.W.2d 833 (Iowa App. 1991); Culverhouse v. State, 755 S.W.2d 856 (Tex.Cr.App. 1988); Scarbrough v. State, 777 S.W.2d 83 (Tex. Cr.App. 1989); Ortberg v. State, 751 P.2d 1368 (Alaska App. 1988); Parren v. State, 309 Md. 260, 523 A.2d 597 (1987); Ford v. State, 515 So.2d 34 (Ala.Cr.App. 1986); State v. Dupre, 500 So.2d 873 (Ct.App.La. 1986); Funderburg v. State, 717 S.W.2d 637 (Tex.Cr.App. 1986); Moore v. State, 142 Ga. App. 145, 235 S.E.2d 577 (1977); State v. Randall, 530 S.W.2d 407 (Mo. Ct. App. 1975).
[3] In his brief, Metcalf acknowledges that he made known his desire to represent himself on February 19, at which time the trial court entered an order for a mental examination to determine whether he was competent to stand trial and if he was capable of representing himself.
[4] On appeal, Metcalf has continued to act as co-counsel on his case. Although the brief was filed by his new attorney, W.S. Stuckey, this Court has ruled on several motions filed by Metcalf.
[5] Metcalf asked each witness whether he had been present at the time of the crime to see the defendant passing the forged check.