# IN THE COURT OF APPEALS 5/21/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 95-KA-00386 COA

**AUGUSTA DONALD BALL A/K/A**

**AUGUSTA DONALD BALLS A/K/A**

**BUSTER**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. WILLIAM F. COLEMAN

COURT FROM WHICH APPEALED: HINDS COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

A. RANDALL HARRIS

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: JEFFREY A. KLINGFUSS

DISTRICT ATTORNEY: EDWARD J. PETERS

NATURE OF THE CASE: MURDER

TRIAL COURT DISPOSITION: CONVICTED OF MURDER AND SENTENCED TO LIFE

IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS

BEFORE THOMAS, P.J., BARBER, AND PAYNE, JJ.

THOMAS, P.J., FOR THE COURT:

Ball was convicted of murder and sentenced to life imprisonment. He appeals, assigning three issues as error: (1) whether the jury verdict was contrary to the overwhelming weight of the evidence; (2) whether the trial court erred in responding to a jury inquiry; and (3) whether the prosecution improperly commented during closing argument so as to deny Ball a fair trial. Finding no merit to these issues, we affirm.

FACTS

On November 17, 1992, Robert Sheppard was shot to death outside the Dairy Bar in Jackson, Mississippi. Two eyewitnesses testified at trial that Ball shot Sheppard. Kenneth Wilson, who was employed by the Dairy Bar and was working on the night of the shooting, testified that he saw Ball follow the victim out of the bar while drawing a weapon. Wilson also testified that he heard Ball state that his gun " was jammed" as he stepped out of the door to the bar. Wilson testified that Ball then stepped into his line of sight through a window and shot Sheppard a number of times.

A second eyewitness, Larry Womack, a cousin of the victim, testified that he saw Ball shoot Sheppard in the parking lot of the bar as Sheppard tried to flee. Womack had also previously identified Sheppard from a photo display. Officer Jerald Jones of the Jackson Police Department testified that three live rounds of ammunition were found in the doorway of the bar and seven spent casings were found in the parking lot. There was no other physical evidence to connect Ball to the scene.

During the course of deliberations, the jury sent out an inquiry that asked: "How did K. Wilson first identify the defendant after the shooting ? i.e. pictures, lineup." After discussing his response with counsel for both parties, the judge responded as follows: "I am not permitted to answer this question." The jury found Ball guilty of murder.

ANALYSIS

I. WAS THE JURY VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE ?

Ball asserts that there was insufficient evidence to convict him of murder since some of the statements of the two eyewitnesses were inconsistent or contradictory. Our scope of review on appeal of a challenge to the sufficiency of the evidence is very limited. This standard has been stated many times and need not be restated here. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993); *Nicolaou v. State*, 612 So. 2d 1080, 1083 (Miss. 1992); *McFee v. State*, 511 So. 2d 130, 133-34

(Miss. 1987); *Wetz v. State*, 503 So. 2d 803, 812 (Miss. 1987). Suffice it to say that there was more than sufficient evidence to support the jury verdict.

On cross-examination, the testimony of the two eyewitnesses became slightly confused and contradictory. Ball contends that impeachment on cross-examination renders the evidence legally insufficient to support the guilty verdict. However, such conflicting statements are merely factors within the province of the jury as it considers the weight and credibility of each witness. *Harris v. State*, 527 So. 2d 647, 649(Miss. 1988); *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983); *Young v. State*, 420 So. 2d 1055, 1057 (Miss. 1982). There is no merit to this issue.

## II. WAS THE TRIAL COURT IN ERROR WHEN IT REFUSED TO ANSWER THE JURY INQUIRY ?

Ball contends that the trial court erred when it refused to answer the jury inquiry. Since Ball failed to contemporaneously object to the trial court's decision on how to answer the inquiry, he is procedurally barred from raising this issue on appeal. *Metcalf v. State*, 629 So. 2d 558, 561-62 (Miss. 1993).

Even if this issue were not procedurally barred, Ball could not prevail. We may not reverse the trial judge's decision of whether to answer a jury inquiry unless there is an abuse of discretion, and the judge's ruling was arbitrary and clearly erroneous. *Westbrook v. State*, 658 So. 2d 847, 851 (Miss. 1995). The trial court must avoid making an improper comment on the evidence and should not single out or comment on specific items of evidence. *Duckworth v. State*, 477 So. 2d 935, 938 (Miss. 1985). If the trial court had answered the question as Ball requested, the court would have been in error.

## III. DID THE PROSECUTION IMPROPERLY COMMENT DURING CLOSING, OR, ALTERNATIVELY, SHOULD BALL HAVE BEEN ALLOWED TO IMPEACH A WITNESS WITH EVIDENCE OF JUVENILE CONVICTIONS ?

Ball also contends that the State improperly commented on the testimony of Larry Womack to mislead the jury during closing argument or, alternatively, that he should have been allowed to impeach Womack. Womack, who was thirteen years old at the time of the shooting, has a juvenile court record. The trial court granted the State's motion in limine prohibiting any questioning about Womack's juvenile record. During the State's examinations of Womack, who was described as mentally "slow," and Detective John Bowman, the State emphasized that the detectives who showed the photo spread to Womack scrupulously avoided making any suggestion about which person to identify because the detectives were worried that, because of Womack's intellectual limitations, he might be more likely than an average witness to identify the person that he thought the detectives wanted him to identify. During closing argument, the State discussed Womack's testimony and his identification of Ball as follows:

Now, Larry Womack is a young man who reads at a sixth grade level. I have dealt lots of times with

witnesses who are always afraid, who are nervous, and who are sometimes a little slow, and sometimes they're children. And on the night of this crime, Larry Womack was a child. He may have been at a bar in the parking lot, he may be a person who at the ripe old age of 13 knows a nine millimeter when he sees one, but the fact remains he was a child. And he's a child who likes to please people.

And so when I read the statement and I realized that it was given by a 13 year old person, before I had ever even met him and realized how difficult sometimes he was to drag information out of, I thought it best in preparation for trial that the officer showed him a photo spread.

Larry Womack is somebody who if you ask him a question he wants to give you the right answer. And officers are well aware of that type of circumstance, and they don't want to get themselves down the wrong bunny trail. Trust me, they don't. They want the right guy. They have to come in here and testify under oath, and you get caught if you screw up. So they want a positive identification that they can rely on, and that's why they get physical characteristics as similar as they do in this case.

And so when they started talking to Larry and they realized that Larry is a sweet young man who wants to do what you want him to do, they don't say "point," and he points - "that's him right there." Now, that has nothing to do with pleasing people. You can't pick if you don't know. . . .

When that young man was standing out there in that parking lot that night, he was 13 years old and he had just seen his cousin get out of the car, walk into the bar, walk back out and be followed by a man with a gun . . .


First, since Ball failed to object to the closing argument or to raise the issue of the judge's ruling on the motion in limine in his motion for a new trial, Ball is procedurally barred from raising this issue on appeal. *Metcalf*, 629 So. 2d at 562. Even if not procedurally barred, there is no merit to this issue.

The only offense evident in the record was that Womack was convicted on the sale of cocaine while a juvenile. Were Womack an adult, his offense would be inadmissible under Mississippi Rule of Evidence 609(a)(2) because it did not involve dishonesty or false statement, and we fathom no reason how this conviction would become admissible under Rule 609(a)(1). Nonetheless, juvenile adjudications are generally inadmissible absent a showing that they are necessary for a fair determination of guilt or innocence. M.R.E. 609(d). Nothing before us indicates that the admissibility of this juvenile conviction added anything to or took anything away from the fairness of Ball's trial.

The State's comment during closing argument was nothing more than a proper comment on the evidence. A party is given great latitude in closing argument. *Dunaway v. State*, 551 So. 2d 162, 162 (Miss. 1989); *Monk v. State*, 532 So. 2d 592, 601 (Miss. 1988). There is no merit to this issue.

**THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF MURDER AND SENTENCE TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS ASSESSED TO HINDS COUNTY.**

**FRAISER, C.J., BRIDGES, P.J., BARBER, COLEMAN, DIAZ, KING, McMILLIN, PAYNE, AND SOUTHWICK, JJ., CONCUR.**