# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01859-COA

**GREGORY HILLIE A/K/A GREGORY MARQUE HILLIE**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/12/2019 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | BRENDA F. MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/02/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1. Gregory Hillie was indicted in Bolivar County for first degree murder (Count I) pursuant to Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2014) and aggravated assault (Count II) pursuant to Mississippi Code Annotated section 97-3-7(2)(a) (Rev. 2014). Hillie's indictment contained a firearm enhancement pursuant to Mississippi Code Annotated section 97-37-37(1) and (2) (Rev. 2014). After trial, Hillie was convicted of both Count I and Count II. He was sentenced to life imprisonment for Count I and twenty years for Count II to be served in the custody of the Mississippi Department of Corrections. The sentences

were set to run consecutively. Hillie filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which was denied. Hillie now appeals, asserting that the circuit court failed to comply with Mississippi Rule of Criminal Procedure 7.1(c) regarding his desire for self-representation and alleged waiver of counsel. As a result of this alleged error, Hillie requests reversal of his conviction and a new trial. Finding no error, we affirm the circuit court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. On the evening of July 16, 2015, a group of friends and acquaintances were gathered at the intersection of Johnson Avenue and White Street in Cleveland, Mississippi. Among those gathered were Gregory Hillie, Lawrence Falconer, and Falconer's son, Willie Coleman. Falconer and Coleman had recently arrived in town to attend a family wedding. Hillie had also recently arrived in town from Chicago on the same bus as Falconer. Hillie was in a wheelchair on the night of the gathering. The group was congregated outside, socializing, drinking beer, and rapping. The gathering spilled over into the early morning of July 17, 2015. While the group was talking, Hillie told everyone that he was an "insane gangster" in Chicago, which he claimed was a branch of the "gangster disciples." Suspicious of Hillie's claim, Coleman called a friend in Chicago to verify the existence of the group. Coleman's friend confirmed his suspicion and told Coleman that he had never heard of the "insane gangsters." According to Coleman, Hillie seemed "disrespected" by the fact that the men questioned the existence of, and his membership in, the "insane gangsters." Coleman testified that Hillie suddenly pulled a gun out of his pants and shot Colman in the leg. After

2

shooting Coleman a second time, Hillie proceeded to shoot Falconer in the leg. As Falconer tried to crawl away from the scene, Hillie shot Falconer a second time, but this time Hillie shot him in the head. According to Coleman, Hillie then rolled away in his wheelchair yelling, "I told you I was insane." By the time the police arrived on the scene, Falconer was deceased. Coleman's injuries were not fatal, but he was unable to answer questions on that day at the scene of the shooting. After detaining and questioning the remaining witnesses at the scene, Hillie ultimately became the prime suspect. Several witnesses were able to identify Hillie as the shooter specifically because they said the shooter was in a wheelchair. Hillie was arrested in Chicago ten days after the shooting; however, a gun was never recovered. On March 30, 2016, Hillie was indicted for first degree murder (Count I) and aggravated assault (Count II) in connection with Falconer's death and Coleman's gunshot injuries. Hillie's indictment included a firearm enhancement.

¶3. At the outset, the circuit court appointed Christopher Powell as Hillie's attorney. Early on in the litigation process, Powell filed a motion for a mental evaluation on Hillie's behalf. The circuit court granted Hillie's request for a mental evaluation, and he was examined by forensic psychologist Christine Collins, who found him competent to stand trial. While Hillie had not yet made a formal request to the circuit court to represent himself, there was a line of questioning at the competency hearing during cross-examination wherein Dr. Collins was asked if Hillie was competent enough or had the mental capacity to choose to represent himself if he so chose. Dr. Collins testified, "[Y]es, I would think that he is competent enough to ask a Court if he could." At the conclusion of the competency hearing

and in response to the line of questioning regarding the possibility of Hillie's self-representation, the circuit judge stated:

> With regard to the question of competency to stand trial which is actually why we're here, although she did offer an opinion as to – he's competent to make the decision – **whether or not he would want to defend himself or not, I frankly think that would be a devastating decision on his part, but he's entitled to make that decision if he so chooses**.

(Emphasis added).

¶4. Following the competency hearing, Powell filed a motion for Hillie to be allowed to proceed pro se. At the beginning of the motion hearing, the circuit judge stated, "I think any defendant has a right to represent himself if he so chooses. I can't say it's the wisest course of – the wisest course, but he certainly has that right." Powell further addressed Hillie's request that Powell be removed from the case as Hillie's attorney. The circuit judge responded to that request and stated:

> I can tell you that I am reluctant to do that. There are – I don't know Mr. Hillie's background, but certainly there are subtleties that can occur both pretrial and during the trial that someone that lacks a legal education and/or more importantly the experience of trial work, particularly in a criminal case, particularly in a capital – with a capital charge, may not fully grasp. Those are my concerns, and, frankly, notwithstanding Mr. Hillie's desire, as expressed in the motion, I cannot imagine a circumstance under which I would allow Mr. Hillie to proceed without you at least being available to him at all times, and if that means you would be sitting at counsel table, you'll be sitting at counsel table so that if a question were to come up or some issue were to come up and he needs – because the Court is not gonna be in a position to be able to explain anything to Mr. Hillie except perhaps from a procedural standpoint. But there may be some – a question may come up with regard to strategy or evidentiary in nature that, without a good understanding of the rules of evidence and the rules – now the rules of criminal procedure – he would be in a significant disadvantage. **So I don't expect I'll be releasing you from this matter**.

> Now, merely if Mr. Hillie chooses to represent himself, which I personally

4

think is not – and professionally think is not a good decision, but he has the right to do so if that's what he chooses to do. So I think – have I fairly addressed those issues?

(Emphasis added). The circuit court entered an order granting in part and denying in part Hillie's motion to proceed pro se. The order stated in part:

> Despite the court's statements to the defendant advising against proceeding pro se in this cause and pointing out possible evidentiary and procedural pitfalls which the defendant may encounter, the defendant remained steadfast in his desire to proceed pro se in this matter. Such does not require the countenance of the court—the defendant has a right to proceed pro se if he elects to do so. As such, for whatever purposes, the defendant's request to proceed pro se is granted. **The motion also seeks the removal of the defendant's current counsel, an experienced criminal trial attorney, from the case. The court declines such request. Counsel will remain appointed to the defendant albeit in a severely limited role. Counsel shall appear with the defendant at all hearings and trial and be available to render advice to the defendant if the defendant so request.** Counsel will not sit at counsel table but rather shall sit at the bar, immediately behind the defendant. Counsel will continue in this role and under such limitation until such time as the defendant makes known his desire that counsel resume his representation.

(Emphasis added).

¶5. Pursuant to the circuit court's order, Powell was not allowed to withdraw from Hillie's case, and Powell attended the first day of Hillie's trial. At the onset of the trial, the circuit court reiterated that Powell would be available throughout the trial to assist Hillie with questions regarding trial procedure or anything else that Hillie might require assistance with. Further, the circuit court advised Hillie of the serious nature of the charges against him. The court stated, "You do understand that if you are convicted on this first count, which is murder, first degree murder, the Court has no option as to the sentence? Do you understand that? It will be life in prison. Do you understand that, sir?" The circuit court advised Hillie

5

that it would not tolerate any disruptive behavior during the trial and that he would be removed from the courtroom for any such behavior. Finally, the circuit court advised Hillie about opening statements, voir dire, and the appropriate way to question witnesses without making statements.

¶6. During the preliminary stage on the first day of trial, Hillie asked the judge to recuse himself several times. After each request was denied, Hillie asked Powell to make a formal motion to recuse. In turn, Powell made an ore tenus motion for the judge to recuse himself. Powell also made an ore tenus motion for permission to file an interlocutory appeal. Both motions were denied. Shortly thereafter, Hillie requested a bench trial. The circuit judge voiced his concern with Hillie's request and gave him time to consult with Powell before finalizing his decision. When Powell and Hillie returned, Hillie asked the circuit court to appoint him a new public defender, and more specifically, he requested Raymond Wong. After much discussion about the posture of the case and the ramifications of a continuance, the circuit court granted Hillie's request and entered an order appointing co-counsel, continuing and re-setting trial. This order stated in part, "[T]he honorable Raymond Wong is hereby appointed co-counsel and lead counsel for the above defendant." There was never an order entered to alter Wong's appointment.

¶7. On December 9, 2019, Hillie's bench trial resumed with Raymond Wong serving as Hillie's newly appointed attorney. Wong proceeded to cross-examine the State's first four witnesses. At the conclusion of the State's fourth witness, Hillie told the circuit court that he wanted Wong removed from his case and requested another public defender. The circuit

6

court denied Hillie's request, and the State called its fifth witness, Abraham Walton, to the stand. When it came time for Wong to cross-examine Walton, Hillie interjected again that he wanted Wong removed and that he wanted to "buy" an attorney. The circuit court denied Hillie's request for a new attorney, and Wong proceeded to cross-examination Walton. At the end of the day there was yet another conversation on the record about Hillie's representation. Hillie told the circuit court that he wanted to represent himself. In response, the circuit judge stated, "Okay, you can do that. I'm not letting Mr. Wong out. . . . Mr. Wong's gonna stay there." Hillie responded, "That's good enough. . . . You can let Mr. Wong stay there."

¶8. On December 10, 2019, the second day of trial, Hillie renewed his request to represent himself. The circuit judge proceeded to discuss this request with Hillie as follows:

THE COURT: All right. Mr. Hillie, I understand that you want to represent yourself from this point forward. Is that accurate?

HILLIE: Yes. . . .

THE COURT: All right. That means you'll be conducting the cross-examination of the witnesses, is that what you anticipate doing?

HILLIE: Yes.

THE COURT: All right. Do you understand that when you conduct a cross – although without a jury here, it's not nearly as significant as it would be otherwise, but you understand that when you cross-examine a witness, you are limited to asking questions, not making statement? Do you understand that?

HILLIE: Yes.

| THE COURT: | Do you understand that Mr. Wong here has about – I don't know – probably 30 years or so, maybe 40 years of experience in criminal defense work, and you're saying that you do not want to utilize his services any further; you want to conduct this trial by yourself? . . . |
|---|---|
| HILLIE: | He can assist if I have to go through appeal. |
| THE COURT: | I'm talking about the trial right now, this trial. **Do you want Mr. Wong's assistance in this trial?** |
| HILLIE: | **Yes.** |

(Emphasis added). Hillie advised the circuit court that he wanted to personally cross-examine and question the remaining witnesses himself. The circuit judge reminded Hillie that he could request that Wong resume questioning the witnesses at any point during the remainder of the trial. However, Hillie proceeded to cross-examine and question all of the remaining witnesses.

¶9. At the conclusion of the trial, Hillie was convicted of both Count I and Count II. Hillie was sentenced to life imprisonment for Count I and twenty years for Count II to be served in the custody of the Mississippi Department of Corrections, with the sentences set to run consecutively. Wong filed a motion for JNOV or, in the alternative, a new trial, which was denied.

## STANDARD OF REVIEW

¶10. "The Court's standard of review on such constitutional issues is de novo." *Hearn v. State*, 3 So. 3d 722, 732 (¶25) (Miss. 2008).

## ANALYSIS

¶11. Hillie claims that he was not fully advised about the ramifications and potential

8

pitfalls of representing himself pursuant to Mississippi Rule of Criminal Procedure 7.1(c) and that there was not a "finding of informed waiver of counsel" as required by the Sixth Amendment. U.S. Const. amend. VI. As a result of the circuit court's alleged error, Hillie claims that his conviction should be reversed and that he should be granted a new trial. Mississippi Rule of Criminal Procedure 7.1(c) reads as follows:

> **Waiver of Right to counsel.** When the court learns that a defendant desires to act as his/her own attorney, the court shall conduct an on-the-record examination of the defendant to determine if the defendant knowingly and voluntarily desires to act as his/her own attorney. The court shall inform the defendant that:
>
> > 1. The defendant has a right to an attorney, and if the defendant cannot afford an attorney, then the court will appoint one free of charge to defend or assist the defendant in his/her defense.
> >
> > 2. The defendant has the right to conduct the defense and may elect to do so and allow whatever role (s)he desires to his/her attorney.
> >
> > 3. The court will not relax or disregard the rules of evidence, procedure or courtroom protocol for the defendant and that the defendant will be bound by and have to conduct himself/herself within the same rules as an attorney, that these rules are not simple and that without legal advice his/her ability to defend himself/herself will be hampered.
> >
> > 4. The right to proceed *pro se* usually increases the likelihood of a trial outcome unfavorable to the defendant.
> >
> > 5. Other matters as the court deems appropriate.
>
> After informing the defendant and ascertaining that the defendant understands these matters, the court will ascertain whether the defendant still wishes to proceed *pro se* or if the defendant desires an attorney to assist him/her in his/her defense. If the defendant desires to proceed *pro se*, the court should determine whether the defendant has exercised this right knowingly and voluntarily, and if so, make the finding a matter of record. At the time of

accepting a defendant's waiver of the right to counsel, the court shall inform the defendant that the waiver may be withdrawn and counsel appointed or retained at any stage of the proceedings. Additionally the court may appoint an attorney to assist the defendant on procedure and protocol, even if the defendant does not desire an attorney. Such advisory counsel shall be given notice of all matters of which the defendant is notified.

¶12. The State argues that the circuit court was not required to comply with Mississippi Rule of Criminal Procedure 7.1(c) because Hillie was never without counsel at any point during his trial. Rather, the State maintains that Hillie had a hybrid representation, which has been more specifically described by the Mississippi Supreme Court in *Metcalfe v. State*, 629 So. 2d 558, 565 (Miss. 1993). In *Metcalfe*, the supreme court stated:

In order to strike a balance between the right to counsel and the right to self-representation many courts have turned to "hybrid representation" as a middle ground. Hybrid representation is considered to encompass both the participation of the defendant in the conduct of trial when he has not effectively waived the assistance of an attorney to defend him, and the participation by an attorney in the conduct of the trial when the defendant is defending pro se.

*Id*. at 562. Further, the supreme court has set out various factors to be considered when determining if a party has pro se or hybrid representation as follows:

[T]he defendant's accessibility to counsel; whether and how often he consults with counsel up to the point of the request; the stage of trial at which he requests a participatory role in his defense; the magnitude of the role he desires to assume; whether the trial court encourages immediate and constant accessibility of counsel; and the nature and extent of assistance of counsel which has been provided up to the point of the request, including both substantive and procedural aid.

*Hearn*, 3 So. 3d at 734 (¶29).

¶13. In *Hearn*, the supreme court stated, "We need not address whether Hearn properly waived counsel or was adequately warned about proceeding pro se because he was never left

10

to his own defense — Duggan functionally remained counsel throughout trial in the form of 'hybrid representation.'" *Id*. Hearn's attorney, Duggan, was present throughout Hearn's trial, and Hearn conferred with Duggan during the cross-examination of three witnesses and before he took the stand in his own defense. *Id*. at (¶30). Duggan filed pretrial motions and also represented Hearn at a pretrial hearing. *Id*. Finally, the trial judge encouraged Hearn's use of his constant accessibility to Duggan's advice and help. *Id*.

¶14. In this case, Powell and Wong's participation in Hillie's representation far surpassed that of the attorney in *Hearn*. Powell filed pretrial motions on Hillie's behalf and represented Hillie in a preliminary competency hearing. Powell attended all of Hillie's court proceedings before he was allowed to withdraw as counsel at the urging of Hillie, and Wong was substituted in his place. The court even continued the first trial to allow hybrid counsel an opportunity to prepare. Wong was present for the entirety of Hillie's trial and cross-examined the State's first four witnesses. At one point during trial when Hillie requested to represent himself, the circuit court specifically asked Hillie if he wanted Wong's assistance with the trial and Hillie said "Yes." It appears Hillie was attempting to delay and impede his trial by abusing the appointment of counsel rules and continuously requesting to represent himself after each of his trials had started. Finally, after Hillie's trial, Wong filed a motion for JNOV or, in the alternative, a new trial. Throughout the entirety of Hillie's pretrial motion hearings and his trial, the circuit court made it abundantly clear that Hillie would have access to either Powell or Wong to assist him in his legal representation. The circuit court ordered the presence of counsel at each and every one of Hillie's court proceedings to assist

11

Hillie with any and all questions that might arise. Considering Hillie's continuous access to legal representation by both Powell and Wong throughout the entirety of all his legal proceedings, and given counsel's active role in advising, filing motions, and cross-examining witnesses, Hillie had "hybrid representation." Therefore, the requirements of Mississippi Rule of Criminal Procedure 7.1(c) did not apply, and Hillie was not denied assistance of counsel. The circuit court made every reasonable effort to accommodate Hillie's continued requests to represent himself and afford Hillie necessary legal assistance at the same time.

## CONCLUSION

¶15.    After review, we find that as a result of Hillie's hybrid representation, the circuit court did not err in handling the continuous requests by Hillie to represent himself and did not violate Rule 7.1(c). Finding no error, Hillie's convictions and sentences for first degree murder and aggravated assault are affirmed.

¶16.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD AND McCARTY, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**